JANE COLE, PETITIONER-RESPONDENT, v. I. LEWIS CIGAR MFG. CO., RESPONDENT-APPELLANT.

Argued September 19, 1949—Decided October 17, 1949.

*Mr. Frank Fink* argued the cause for the appellant (*Mr. James J. Carroll,* attorney).

*Mr. Alexander Avidan* argued the cause for the respondent (*Messrs. Avidan & Avidan,* attorneys).

The opinion of the court was delivered by

VANDERBILT, C. J.   The first question that demands our attention in this case is whether or not the appellant has a right to appeal to this court.

Thomas G. Cole, the petitioner's husband, was employed as a watchman in the appellant's factory in Newark on a 3 P. M. to 11 P. M. shift.   On February 6, 1947, while making his last tour of inspection in the basement before being relieved, he was struck on the head with a pinch bar or similar instrument by an unknown colored man or men, the pay that he had received earlier in the day was stolen, and he was left bound hand and foot.   Except for the pinch bar, that normally hung on the wall but which was found on the floor, nothing was disturbed in the plant or taken from it.   At approximately 10:40 P. M. the relief watchman, who was then engaged in an unsuccessful attempt to gain admission to the factory, saw an unknown colored man run away from the building.   Cole died of the injuries thus received five days later.

On the basis of these proofs the Workmen's Compensation Bureau on May 27, 1948, dismissed the petition on the ground that there was nothing to indicate that Cole's assailant was in the appellant's plant with intent to steal anything from the plant and that the evidence pointed "the other way," *i. e.,* that the assailant was there solely to robe Cole.   After the petitioner had appealed to the Essex County Court of Common Pleas the murderer was captured, confessed, and was there-

after committed to the New Jersey State Hospital as suffering from dementia praecox. Thereupon, on September 21, 1948, without making any determination the Essex County Court, to which the proceeding had been transferred on September 15th under the new Constitution, remanded the matter to the Bureau to permit the taking of newly discovered evidence and the making of such determination as might seem justified in law. The order, to which both parties consented, provided that the pending appeal was "withdrawn and discontinued." At the subsequent hearing in the Bureau the confession of the murderer was offered, but it was excluded as hearsay. No other evidence being offered, the Bureau on November 15, 1948, again dismissed the petition.

The petitioner then appealed to the Essex County Court, which reversed the determination of the Bureau on the ground that the attack upon Cole was a risk to which he was exposed as a normal incident of the nature of his employment as a night watchman and that, since the proofs showed no acquaintance between Cole and his assailant and no known reason for a personal attack upon him by anyone, in the absence of contrary evidence adduced by the employer it must be conceded that death arose out of his employment, 63 *A.* 2d 293 (1948), not officially reported. The employer then appealed to the Appellate Division of the Superior Court which unanimously affirmed the judgment of the County Court, 3 *N. J. Super.* 157 (*App. Div.* 1949). From this judgment the employer now appeals to this court.

The present appeal has been improperly taken to this court and is subject to dismissal as contended by the petitioner. The appellant seems to conceive that it has some right of appeal under the terms of the legislation implementing the 1947 Constitution, because of the fact that the first order of dismissal in the Bureau was entered on May 27, 1948, and the appeal from the order to the Essex County Court of Common Pleas was taken before September 15, 1948, the effective date of the Judicial Article of the new Constitution. On September 21, 1948, however, the appeal from the dismissal of May 27, 1948, was by consent of the parties "withdrawn

and discontinued" in the Essex County Court and all possibility of further proceedings on that appeal necessarily fell with it. The determination of the Bureau that the appellant now seeks to review was not entered until November 15, 1948, two months after the effective date of the Judicial Article, and it is accordingly governed by the provisions of the new Constitution, which give the appellant an appeal of right to the Appellate Division of the Superior Court, with a further appeal to this court as of right only when a constitutional question is involved or there is a dissent in the Appellate Division (*Art. VI, Sec. V, par.* 1).

■ This court, however, will not suffer an appellant to lose the right to a review here of a meritorious question solely by reason of his having mistakenly proceeded by appeal rather than by petition for certification or *vice versa*. In consonance with the spirit of our new practice as epitomized in *Rule* 1:7–9 we have examined the appeal as if it had been filed as a petition for certification under *Rule* 1:5–2, and we have concluded that an important question of law is presented that should be considered by this court. The appeal will therefore be treated as a cause in which certification has been granted on our own motion, *Rule* 1:5–1(a).

■ The defense interposed by the employer is that the accident that resulted in Cole's death did not arise out of his employment. There is no substantial dispute as to the facts of the case—indeed, they have been for the most part stipulated by counsel—and the controversy hinges on the inferences that are rationally to be drawn from the conceded facts. The stipulation of counsel admits that the relief watchman, who was to have taken over Cole's work at 11 P. M., was unable to gain admission to the factory at 10:30 P. M., that he ultimately sought the aid of the police at 10:55 P. M., that they broke in the door at 11 P. M., and entered the factory, that at the foot of the stairs leading from the office to the basement they found a pool of blood, that upstairs in the office they found Cole sitting or bending over in a chair, his head covered with blood, that he mentioned that his pay had been taken from him by an unknown assailant, who had struck him on the

head, that his death was the direct and proximate result of the blow, and that the immediate cause of death was "homicide by assault, compound comminuted fracture of the skull, laceration and hemorrhage in the brain." There was a further stipulation by counsel that Cole had told a detective at the Newark City Hospital that, while he was making his last tour of inspection in the basement before reporting off duty, some unknown colored man or men hit him on the head with an iron instrument and stole his wallet containing his pay and other money of his amounting to about $56, that his hands and feet were tied, that when he came to he walked upstairs and sat on the chair where the police and his relief watchman found him, and that he could not describe his assailant as he did not know him.

The other evidence is undisputed. As was stated earlier in dealing with the question of jurisdiction, at about 10:40 P. M. the relief watchman, while still engaged in an unsuccessful attempt to get into the factory, saw an unknown colored man run away from the building. While we may not use the confession of the murderer, the payroll clerk of the appellant testified that he was not a fellow employee of Cole. Cole, in fact, did not know him. Indeed, the evidence is that Cole had no personal enemies. Of especial significance is the evidence that Cole was not obliged to ring any watchman's box at stated intervals. It was not until after his death that a watchman's security service was installed. Prior to the accident in the event of an emergency a watchman could only avail himself of the use of the telephone to give an alarm and to summon protection for the plant and assistance for himself.

The Workmen's Compensation Bureau took the view that the assailant entered the factory to rob Cole and not the plant, but nowhere is it explained how he knew that Cole had $56, or why he would go to the great risk of invading the factory for so small a sum, or why, if his intent was merely to rob Cole, he took the risk of taking the time to tie Cole hand and foot after he had snatched Cole's wallet. Every reasonable inference points to an intent on the part of Cole's assailant to rob the factory, a plan in which the laying low of Cole

was a necessary step and the snatching of Cole's wallet but an incident. Manifestly, he was forced to abandon his projected crime and flee the building for fear of detection by the relief watchman.

The danger of robbery is inherent in a night watchman's employment. The very nature of his duties, including as it does keeping a lookout for burglars and reporting attempts to enter the premises of his employer, makes him much more likely to be the subject of attack than the ordinary employee, who works at a machine in the factory or in an office. But it is not necessary that the particular risk involved in the accident, to be compensable, should have been foreseen by either of the parties to the contract of employment. In *Sanders v. Jarka Corp.*, 1 *N. J.* 36, 40 (1948), which was a case of a truck driver who, while attempting to obtain information from the driver of another truck that had collided with him, was assaulted by the other driver's helper, Mr. Justice Wachenfeld, speaking for this court, said:

"The injuries need not have been foreseen, but it suffices if they flowed as a rational consequence from a risk connected with the employment."

Holding that "employment as a cause of the injuries sustained has been emphasized as a basis of recovery," he cited with approval *Giracelli v. Franklin Cleaners & Dyers, Inc.*, 132 *N. J. L.* 500 (*Sup. Ct.* 1945), where compensation was allowed a female employee required to work alone in a dry cleaning establishment, who suffered injury through rape by a customer. Especially pertinent here are the excerpts from the *Giracelli* decision which were quoted in approving it in the *Sanders* case:

" 'And a consideration of human behavior as we find it impels us to think that the experience visited on the petitioner in this case was a risk, attaching to the employment. * * * But for the conditions surrounding the petitioner's employment the accident would not have happened.' "

The employer relies much on *Walther v. American Paper Co.*, 89 *N. J. L.* 732 (*E. & A.* 1916), a *per curiam* affirmance

of a *per curiam* opinion of the former Supreme Court. There, however, the assailant was a co-employee who, having lost all of his money gambling on payday, concealed himself in the plant for the sole purpose of robbing the decedent watchman of his pay. The case was submitted on a stipulation of fact which contained the following significant statement:

"* * * The assailant's purpose in going to the mill at night and hiding in it was to rob Walther, and he did not attempt any robbery from the office of the mill, or any destruction of the mill property or any mischief or crime other than the robbery of Walther."

In the light of this stipulation there was no room for the inference that the attack had been made for purposes other than the single one of robbing the employee. Accordingly, the *Walther* case was distinguished from the case at bar by the Appellate Division, and treated as an exception to the general rule governing attacks on night watchmen. It would seem, however, that the fact that Walther was murdered by a fellow employee intent on robbing him should not under the doctrine of the *Sanders* case have barred a recovery. Nor must it be overlooked that the *Walther* case was an early decision under the Workmen's Compensation Act, handed down at a time when the act was still being strictly construed here and elsewhere. The situation in cases involving attacks on night watchmen are, of course, altogether different from the cases involving horseplay or quarrels between fellow employees, *Hulley v. Moosbrugger,* 88 *N. J. L.* 161 (*E. & A.* 1915); *Mountain Ice Co. v. McNeil,* 91 *N. J. L.* 528 (*E. & A.* 1918).

*Nardone v. Public Service Electric & Gas Co.,* 113 *N. J. L.* 540 (*Sup. Ct.* 1934), and *Armstrong v. Union County Trust Co.,* 14 *N. J. Misc.* 648 (*Sup. Ct.* 1936), affirmed *per curiam* on the opinion below in 117 *N. J. L.* 423 (*E. & A.* 1937), are urged on us by the appellant. But in neither of these cases was there any direct or circumstantial proof, as there is here, of the cause of the decedent's death. Nor are *Atchison v. Colgate and Co.,* 3 *N. J. Misc.* 451 (*Sup. Ct.* 1925); affirmed, 102 *N. J. L.* 425 (*E. & A.* 1926), and *Jones v. Newark Ter-*

.minal & Transp. Co., 128 N. J. L. 190 (Sup. Ct. 1942); affirmed, Jones v. Court of Common Pleas, 129 N. J. L. 50 (E. & A. 1942), which are quoted by the appellant for the proposition that "the law does not proceed to judgment on pure surmise," at all apposite. Here, as just stated, we have the testimony of the decedent and the stipulated facts to guide our judgment in reaching rational conclusions.

The judgment of the Appellate Division of the Superior Court is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For reversal*—None.