## FRED B. WASHBURN'S CASE.

### Androscoggin. Opinion January 21, 1924.

*Injuries sustained in the course of employment, by reason of horseplay, practical joking, fooling or skylarking, done independently of or disconnected from the performance of any duty of the employment, do not arise out of the employment, within the meaning of the Workmen's Compensation Act.*

In this case the disputed point is whether the injury arose out of the employment. That is, if, after the event, it can be seen that the playing of such a rough and harmful prank originated in a risk connected with the claimant's service, and if the physical harm which befell him may be followed to that service, without any intervention, as the efficient cause.

The statute cannot be legitimately construed in the light of providing that every accident that may happen to the employee, even while he is on the premises of his employer, shall be of its essence. Each case is to be decided upon the particular facts. And there must not be too clamorous insistence in pressing any claim beyond safe limits.

Measured by the standard that there must be a causal connection between the conditions under which the employee worked and the injury which he received, that the causative danger must be incidental to the character of the business and not independent of the relation of employer and employee, it is plain that no other conclusion could possibly be attained, and that no other reason could be reasonably entertained, than that this claimant's hurt did not originate in causal or incidental connection with his employment. The injury was not a peril of that employment, nor in a just sense related to it, nor had it association with the work as it was required to be performed. It was wholly without the scope of the employment. It was the outcome of the act of a fellow employee, who, in an attempt to be what he himself considered "funny," was inexcusably rude and violent, and who in nowise then represented their same employer.

On appeal. This is an appeal from the finding of the Industrial Accident Commission under the Workmen's Compensation Act, awarding to claimant compensation for injuries sustained while in the employment of Parker Spool & Bobbin Company at Lewiston on March 2, 1923. The claimant in passing from one part of the room where he was at work to another part of the room to get a basket which he needed in his work, stopped to look at some lumber

and as he was about to leave the lumber to continue to get the basket, he was seized from behind by the throat by a coemployee and fell to the floor which resulted in a broken leg. The question involved was as to whether the injury arose out of the employment. After a hearing compensation was awarded and respondents appealed. Appeal sustained, decree below reversed and compensation denied.

The case is fully stated in the opinion.

The claimant was without counsel.

*Eben F. Littlefield*, for respondents.

SITTING: CORNISH, C. J., HANSON, PHILBROOK, DUNN, WILSON, DEASY, JJ.

DUNN, J. Workmen's Compensation Act, R. S., Chap. 50; Laws of 1919, Chap. 238, Sec. 1.

Mr. Washburn was employed as an operative in a spool and bobbin mill. Square blocks of wood were supplied to his machine; the fit ones he bored and sent along to be completed; the imperfect he put into a basket to be taken away. Needing another basket, because the one at hand was filled, he started for the opposite end of the room to get it, as was requisite. On his way he stopped to look at certain lumber to see if it would be easy to bore. While looking, another employee suddenly and unexpectedly made his presence known to him by saying, "Quite a lot of beech down there in that pile." "Yes," replied the present claimant, "quite a lot." Upon that, and as this claimant was about going on again, the coemployee grasped him from behind by the throat, and felled him to the floor, breaking his leg in consequence. For the injury so caused, in unmalicious and unusual conduct, compensation was awarded, the finding and ruling being that its incurrence was accidental, and out of and in the course of employment, within statutory meaning.

The disputed point is whether the injury arose out of the employment. That is, if, after the event, it can be seen that the playing of such a rough and harmful prank originated in a risk connected with the claimant's service, and that the physical harm which befell him may be followed to that service, without any intervention, as the efficient cause.

A comprehensive abstract definition of the expression "arising out of" the employment, which would be inclusive of all cases within

the purview of the act, and with nicety exclude those not within the spirit of its intent, might not readily be framed. Quite as succinct and at the same time as complete a defining as any is, there must be a causal connection between the conditions under which the employee worked and the injury which he received. *Westman's Case*, 118 Maine, 133. True enough, the indispensable inquiry is not one of fault or negligence, and equally true the central idea, around which the provisions of the statute cluster, is that of a relationship between the employment and the injury for which compensation is sought, in which it is obvious to the rational mind that the chain of causation is unbroken and perfectly fitting.

Speaking for the Massachusetts Court, in a luminous and convincing way, Chief Justice Rugg says: "If the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it 'arises out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant." *McNicol's Case*, 215 Mass., 497.

The statute cannot be legitimately construed in the light of providing that every accident that may happen to the employee, even while he is on the premises of his employer, shall be of its essence. Each case is to be decided upon the particular facts. And there must not be too clamorous insistence in pressing any claim beyond safe limits.

Measured by our own standard, and by that quoted and only too gladly accepted from our mother commonwealth, it is plain that no other conclusion could possibly be attained, and that no other reason could be reasonably entertained, than that this claimant's hurt did not originate in causal or incidental connection with his employment. The injury was not a peril of that employment, nor in a just sense related to it, nor did the nature of the employment attract or invite it, nor had it association with the work as it was required to be performed. It was wholly without the scope of

the employment. It was the outcome of the act of a coemployee, who, in an attempt to be what he himself considered "funny," was inexcusably rude and violent, and who in nowise then represented their same employer.

Supporting illustrations are not hard to find. In *Lee's Case*, 240 Mass., 273, when an employee was making, at the noon hour, to ring out on the time clock on the premises where he was employed, he was knocked down by a fellow-workman whom still another employee had pushed, to his consequential injury. Compensation was denied; the court saying that the weight of authority, in this country and in England, was in harmony with its conclusion, a statement abundantly sustained by the cases cited in the opinion. So a claimant, the sight of whose eye was destroyed by a missile playfully directed by a fellow-employee from a trick camera, was denied compensation in California. *Fishering* v. *Pillsbury*, 158 Pac., 215. The same court held that an injury was in the course of, but did not arise out of, employment, where an employee, peculiarly susceptible to being tickled, while bearing a basket down a flight of stairs, was punched in the back by a companion-worker and thereby made to fall, injuring one of his knees. *Coronado Beach Co.* v. *Pillsbury*, 158 Pac., 212. In Michigan, the injury did not come from a causative danger of his employment where one servant was seized by another, who held a compressed air hose to his rectum, while a third turned on the air, all seemingly by way of practical joke, to his injury. *Tarpper* v. *Weston-Mott Company*, 166 N. W., 857; L. R. A., 1918E, 507. Nor did injury so arise in Illinois in a case where one employee was killed by other employees forcing compressed air into his body. *Payne* v. *Industrial Com.*, 129 N. E., 122; 13 A. L. R., 518. In *Armitage* v. *Lancashire, etc., Company*, (1902) 2 K. B. 178, some boys were at work for a railway. One of them pushed another into a pit, on the works, for a "lark." Angered thereby, the boy in the pit picked up a piece of iron and threw it at the one who had shoved him there, but, missing the human target aimed at, the iron hit still another boy, doing injury in respect of which he claimed compensation from their employer. The conclusion was that the act had no relation whatever to the employment. *Hulley* v. *Moosbrugger*, 88 N. J. L., 161; 92 Atl., 1007, holds that an employer is not liable to make compensation for injury to an employee, which was the result of horseplay or skylarking, regardless, as in Massachusetts, (*Lee's Case*, supra,) of

the injured employee's attitude toward the play. Scuffling, begun as a pastime and ending in unintentional harm to one of the two fellow-employees engaging therein, did not lay the basis for compensation in Nebraska. *Pierce* v. *Boyer-Van Kuran, etc. Company,* 156 N. W., 509, L. R. A., 1916D, 970. Again: One Edna Saenger, a milliner, had some difference with her boss with regard to her work. She fainted. Two associate employees of hers rushed for water and ammonia. One brought ammonia and the other water. The glasses containing the liquids became mixed. Another employee, mistaking the glass, threw ammonia into Edna Saenger's face, injuring her. The calamity was not compensable. *Saenger* v. *Locke*, 220 N. Y., 556, L. R. A., 1918F, 225. One employee went from a freight car to a hydrant and got a can of drinking water. He refused to meet another employee's request for a drink, telling him to get his own water. When he climbed upon the car, to resume his work, that other assaulted and fatally hurt him. Compensation was not granted his widow. *Chicago* v. *Industrial Com.*, (Ill.), 127 N. E., 49.

Of course cases are various, which is but saying that if accidents happen differently they are not the same. For example: The head waiter of a hotel, while at luncheon in the hotel, was killed by a waiter of excitable temperament, whom he had discharged for breach of discipline. The waiter, who was an habitual drinker and habitually carried a pistol, shot to gain revenge. The injury suffered by the head waiter, while in the exercise of his employer's business, solely for the reason that as an employee he properly discharged the authority conferred upon him by his contract of employment, and the resultant death were within the concept embodied by the terms of her statute, decided Massachusetts. *Cranney's Case*, 232 Mass., 149. Once more: A master in an industrial school, while engaged in the performance of his duties, was attacked and killed by two pupils. There had been assaults before in the school and several of the boys were surly and unruly. It was held, in a majority decision, that there was evidence to support the finding that the accident arose out of the employment. *Trim Joint District School* v. *Kelley*, (1914) A. C., 667. Not infrequently, it may be added, becoming vigilance on the part of an employer, to whom the hazard is or ought to be known, averts disaster to his subordinate. Still another recorded decision: A foreman over gangs of laborers engaged in loading and discharging ships at a wharf on the Thames, while so

engaged, was wilfully assaulted by one of the men and sustained a severe injury, which was classified as compensable. Scrutton, L. J. puts it thusly: "I take it . . . . that acts of violence deliberately intended to injure, though not accidents from the point of view of the person who inflicts the injury, may be accidents from the point of view of the person who suffers the injury, and that it is a question of fact in each case whether the risk of assault is merely one which is common to any subject of His Majesty equally with the person who has suffered it, or whether there is some risk of assault to the particular person arising from his employment." *Reid* v. *British, etc., Company, Limited,* (1921) 2 K. B., 319. Injury caused a teamster, while eating dinner in his employer's stable, from the bite of a cat belonging there, arose out of the employment. *Rowland* v. *Wright,* (1909) 1 K. B., 963. But injuries directly ascribable to the flying of an insect through an open window into the place of employment did not. *Craske* v. *Wigan,* (1909) 2 K. B., 635.

It seems unnecessary to instance further; nay, it is needless. The term "arising out of," as applied to industrial injuries, though it appears at first sight to be almost as simple as a phrase in a small child's reading book, has yet, as has well been said of it and its conjunctive expression "in the course of," "filled volumes with discussion." *Stertz* v. *Industrial Accident Com.,* (Wash.), 158 Pac., 256; Ann. Cases 1918B, 354.

The term has purpose. That purpose is to create a uniform rule of causation on the plane of which the law shall be administered for the equal good of all within its provisions, and the administration of the statute thereby saved from being plunged into the abyss of misrule. The gist of the whole matter simmers down thereto.

There is an excellent annotation of this subject in American Law Reports, volume 13 at page 540, in which the editor observes that it is generally held that injuries sustained in the course of employment, by reason of horseplay, practical joking, fooling or skylarking, done independently of or disconnected from the performance of any duty of the employment, do not in legislative meaning, arise out of the employment. See, in like vein, a statement in Re Loper (Ind.), 116 N. E., 324. And see the supplemental annotation in 20 A. L. R., 882. There are decisions otherwise, as the annotator clearly marks, by the Oklahoma and other courts of eminence, a fact mentioned here that it may appear that they have not been overlooked.

The record is bare of evidence to support the finding by the Chairman of the Industrial Accident Commission that this claimant's injury arose out of his employment. Therefore the appeal is sustained, the decree below reversed, and compensation denied.

*So ordered.*