MUTUAL IMPLEMENT & HARDWARE INS. Co., et al. *v.* PITTMAN.

June 9, 1952.

No. 38192 (59 So. (2d) 547)

**Morse & Morse,** for appellants.

Williams & Williams, for appellee.

826

**Hall, J.**

This is an appeal from a judgment of the circuit court affirming an award to appellee by the Workmen's Compensation Commission for injuries resulting from an assault and battery committed upon him by a fellow employee. These workers were engaged in laying a concrete floor in a garage building. A concrete mixer was situated just outside the door of the building. Appellee, a Negro boy sixteen years of age, was one of the employees engaged in pushing a wheelbarrow in carrying the concrete from the mixer to the inside of the building. Oliver Stewart, a white man, was engaged in spreading the concrete by means of a shovel when it was emptied from the wheelbarrow. Each time the mixer was emptied there was necessarily a short interval while the mixer was being refilled during which time Pittman and Stewart had no duties to perform. During such an interval Stewart, who was standing in the doorway, removed a cigarette package from his pocket and lighted the last cigarette in the package. He then crushed the package into a small ball and thumped it at Pittman, striking him on the back of his neck, and then turned his back toward Pittman. Pittman looked around and then picked up a small pebble and thumped it toward Stewart, striking him on the shoulder or neck, and Pittman thereupon turned his back toward Stewart. These incidents were

of no consequence and inflicted no injury upon either employee. They fall within the category which is classified in the workmen's compensation decisions as "horseplay". Stewart then walked over behind Pittman and struck him a tremendous blow on the back of the head with the shovel with which he was working. Pittman was knocked unconscious, his skull was fractured, and he sustained a serious and permanent brain injury. At the time of the assault Pittman was standing by his wheelbarrow waiting for it to be refilled by the mixer.

Appellant relies primarily upon a line of decisions which deny compensation for injuries resulting from "horseplay," and, while there is a conflict in the decisions founded on that principle, we are of the opinion that in this case the "horseplay" had ended and that Pittman received his injury as the result of willful assault and battery. In the decisions on injuries resulting from an assault and battery there is also a conflict in the authorities, and since this is a case of first impression in this State it is necessary for us to determine whether we shall follow those authorities which give the compensation act a strict and narrow construction or those that give to it a broad and liberal construction. We align ourselves with the latter group.

In Horovitz on "Current Trends in Workmen's Compensation" pps. 662-665, numerous decisions are cited which sustain the following views of the author: "However, the unending stream of appeals (by insurers mainly, as most employees cannot afford to appeal), on the ground that injuries do not 'arise out of' the employment, will never abate so long as some courts will inject antiquated common law rules into a new law which intended once and for all to bury the narrow rules of the common law as related to work-injuries. A few jurisdictions omitted the use of the words 'out of' the employment, but that did not solve their problem, as the courts properly read in an equivalent requirement of some degree of 'causal relation' to the employment. To say that

'in the course of' the employment i. e. temporal connection alone is sufficient, would make the employer an insurer, and be health and accident insurance in the guise of workmen's compensation. But where any reasonable relation to the employment exists or the employment is a contributory cause, the court is justified in upholding an award as 'out of' the employment.

"The trend is to get away from earlier narrow or strict cases and to follow the more recent liberal views. The overwhelming weight of authority gives the benefit of the doubt to claimants on law questions, as distinguished from fact questions. And the weight of authority urges the trial court or commissioners to construe evidence liberally in favor of claimants in compensation cases; and on appeal there is a growing modern tendency to uphold findings for claimant even though the facts on which they are based are doubtful, slender or weak, and to reverse findings of fact which disregard favorable, uncontradicted evidence, or which reach unfavorable general conclusions, hiding the law of the specific facts, or which construe evidence narrowly against claimants. The rule of liberal and broad construction is especially justified, as the acts usually severely cut down the amounts individuals can recover, with the intent that the recoveries be spread over a larger number of cases and thus benefit larger groups of workers, and to effectuate the humane purposes for which the acts were enacted. Hence board or commission awards based on a liberal construction of the words 'out of' are upheld whenever 'rationally possible.' Any reasonable doubt as to whether the act or injury of the employee arose out of the employment should be resolved in favor of the employee or dependent, in view of the policy of broad and liberal construction of the workmen's compensation law."

Our Compensation Act, Chapter 354, Laws of 1948, provides that the injury must arise "out of and in the course of employment." The foregoing quotation from Horovitz deals with what is meant by the use of the words

'out of' in compensation acts. In the same work at pps. 777-778 the author cites decisions to support his conclusions as to what is meant by the words "in the course of employment" as follows:

"In short, where the injury arises out of the employment, it almost necessarily arises in the course thereof. As said by one court:

"'A good deal has been said about the difference between an accident arising "out of" and one arising "in the course of" the employment. No doubt in the earlier cases under the act there was a certain amount of difficulty in the distinction, but my view on the matter is quite determined. I think it is impossible to have an accident arising out of, which is not also in the course of the employment, but the converse of this is quite possible.'

"Nevertheless, some courts still continue to disallow claims on narrow definitions of the words 'in the course of' the employment, and the intent of the founders of compensation acts to give wide relief to injured workers receives many a jolt as new decisions seek new ways of denying recovery."

As early as 1930, in a case dealing with "horseplay" and sportive acts, the Supreme Court of North Carolina said that The Workmen's Compensation Act "itself contemplates that successful industrial operation presumes the assembling of workers in one place who are engaged in various phases of the general prosecution of the business. It is a self-evident fact that men required to work in daily and intimate contact with other men are subjected to certain hazards by reason of the very contact itself because all men are not alike. Some are playful and full of fun; others are serious and diffident. Some are careless and reckless; others are painstaking and cautious. The assembling of such various types of mind and skill into one place must of necessity create and produce certain risks and hazards by virtue of the very employment itself. * * * The bulk of normal Ameri-

can workmen possess a stratum or residuum of vivacity and good nature which frequently manifests itself in joking and harmless pranks. These things are not unnatural, but natural, and the ordinary outcropping of industrial contact between men of all classes and types. Such risks, therefore, are incident to the business and grow out of it. In an ordinary suit for damages for personal injury, the workman assumes the ordinary risks of the business, but the Compensation Act in such case imposes the ordinary risk of the business upon the employer; that is to say, the employer and not the workman must assume the ordinary risks of the business or employment." Chambers v. Union Oil Company, 199 N. C. 28, 153 S. E. 594, 595. To the above stated contrast in human nature we may add that some men are quarrelsome, contentious, bellicose and inclined to fight, while others are peaceful and not easily provoked to anger, and the very contact between employees who are required to work together subjects them to the hazards resulting from the pugnacious dispositions of their fellow employees in the same manner and to the same extent that they are exposed to hazards of machines about which they are required to work.

In the case of Hartford Accident & Indemnity Company v. Cardillo, 72 App. D. C. 52, 112 F. (2d) 11, 15, certiorari denied 310 U. S. 649, 60 S. Ct. 1100, 84 L. Ed. 1415, an assault was committed by one employee upon another resulting from the fact that the victim had addressed the aggressor by the nickname "Shorty." A claim for compensation was made under the Longshoremen's and Harbor Workers' Compensation Act, 33 U. S. C. A. Sec. 920(a) which is quite similar to our compensation act now under consideration. The United States Employees' Compensation Commission awarded compensation to the injured employee, and, on appeal therefrom, the United States Court of Appeals for the District of Columbia, speaking through the late Justice Wiley Rutledge, said, in part: "An assault necessarily

involves emotional makeup and disturbance. In a broad sense nothing is more personal. Quarreling is always so. This accounts for the early disposition to regard all injuries from wilful assault as not compensable, a view also necessarily dictated, except rarely when duty requires fighting, if tendency of the particular act to forward the work or direct connection with line of duty are the tests of liability. But that view now is repudiated universally in recognition that work causes quarrels and fights. That they involve volition and fault, have no tendency to forward the work, and are permeated with the personal element of anger no longer suffices to break the causal connection between work and injury. Emotional disturbance is not of itself an 'independent, intervening cause' or a 'departure from the work.'

"But differences remain as to when work causes quarrels. So long as the claimant is merely the victim, not a participant, it makes little difference whether the fighting is by fellow employees or strangers to the work or what is the immediate occasion for the dispute. The same is true in horseplay. It is sufficient that the work brings the claimant within the range of peril by requiring his presence there when it strikes. * * * Personal animosities are created by working together on the assembly line or in traffic. Others initiated outside the job are magnified to the breaking point by its compelled contacts. No worker is immune to these pressures and impacts upon temperament. They accumulate and explode over incidents trivial and important, personal and official. But the explosion point is merely the culmination of the antecedent pressures. That it is not relevant to the immediate task, involves a lapse from duty, or contains an element of volition or illegality does not disconnect it from them nor nullify their causal effect in producing its injurious consequences. Any other view would reintroduce the conception of contributory fault, action in the line of duty, nonaccidental character of voluntary conduct, and independent, intervening cause as applied

in tort law, which it was the purpose of the statute to discard. It would require the application of different basic tests of liability for injuries caused by volitional conduct of the claimant and those resulting from negligent action, mechanical causes and the volitional activities of others. * * *

"It follows that the judgment must be affirmed. Taking full account not only of the findings but of all the evidence, it is clear that the entire sequence of incidents occurred not only while the claimant and his assailant were at work, but as a natural and normal product of working together. The record shows no private or personal relations between them. The discussion about watches, if that were material as contended by appellant was carried on in the normal intercourse of employee with employee. It was not relevant to any particular duty; neither was it an interruption or a departure from the work, much less an 'independent, intervening agency.' If 'personal,' it was one of those personal things which employees constantly do, not only while, but because they are working together. All this may be said also concerning the use of the respective appellations of 'Shorty' and 'Skinny,' both in the banter and in the official acts of giving and receiving orders. The claimant may have been at fault in resenting his superior's ridicule, expressed perhaps as much in tone as in language, by repeated use of the diminutive nickname, both personally and officially. His remonstrance should have ended the practice. When it did not, the fighting word sprang to the lips, and the superior employee responded with his fist. Claimant may have been at fault, but he was the aggressor neither in the banter nor in the physical encounter. We do not put the case on the narrow ground that Downey was Bridges' superior and as such owed him the duty not to belittle him or ridicule his physical stature. Fault there was on both sides, the graver perhaps in Downey for the fact that he was the superior and knew not when to stop. But compensability in these circum-

stances is not a matter of comparative fault. The entire sequence of events arose out of the fact that the work of the participants brought them together and created the relations and conditions which resulted in the clash.''

In the case of Ferguson v. Cady-McFarland Gravel Company, 156 La. 871 101 So. 248, 249, from the Supreme Court of our sister State of Louisiana, an employee, while in a stooping position in the course of his employment, was struck on the head and killed with an iron instrument in the hands of a fellow-employee, without knowing why he was so struck, or regaining consciousness thereafter. In holding the death compensable under the compensation act the Court said:

"An employee, like the decedent, who may have an enemy among his fellow employees in the same gang in which he is required to work, necessarily comes in contact with such enemy throughout all hours of the day, and is constantly exposed to assault and bodily harm. He therefore incurs greater risk necessitated by his employment than a person ordinarily would be subjected to outside of such employment.

"The moment we begin to indulge in hair-splitting distinctions in case of this kind, that moment we approach the danger line of reading into the statute the defense that the employee assumes the risks of his employment, a defense which the employer is expressly prohibited from urging under the Employers' Liability Act against a claim for compensation by a workman. Act 38 of 1918, Sec. 4, [LSA-R.S. 23:1042]. Whether the employer, the employee, or the fellow employee is guilty of negligence or not is immaterial, so far as the liability of the employer is concerned. Garcia v. Salmen Brick & Lumber Co., 151 La. 784, 92 So. 335. Therefore the decisions cited by able counsel representing defendant company, and found in the American Law Reports (volume 15, p. 583) [State ex rel. Common

School Dist. No. 1 v. District Court, 140 Minn. 470, 168 N. W. 555] to the effect that the employer is responsible only when he knew of the dangerous character of the co-employee; are inapplicable, as such cases hold the employer liable only when he is proven to be guilty of negligence. As employee is powerless to select competent and law-abiding fellow employees, and evidently, does not assume any risk under the Employers' Liability Act because of the hiring by the employer of unskilled and vicious workmen.

"As employment in gang work, such as decedent was engaged in, necessitates collaboration, the working together of the employees constitutes the nature of such employment, and the risk of assault and personal injury to the employee is to be viewed from that aspect. Obviously, such risk is greater than it would be to a person not engaged in such employment, because such person is not required to be constantly in the presence of an enemy, should he have one."

Another Louisiana case where compensation was awarded for the death of an employee who was shot, while riding in from his work on a log train, by a fellow-employee who was standing on the ground beside the track as the train passed, is Keyhea v. Woodard-Walker Lumber Co., La. App., 147 So. 830, 832 and we quote from the opinion in that case:

"Injury to or accidental killing of an employee is not compensable unless the injury or death arose 'out of and in the course of' the employment and must have been incidental thereto. Kern v. Southport Mill, Ltd., 19 La. App. 338, 136, So. 225; Id., 174 La. 432, 141 So. 19; Conaway & Clark v. Marine Oil Co., 5 La. App. 134 [110 So. 181].

"This question was given thorough consideration by Justice Provosty in the early case, arising under the Workmen's Compensation Law of 1914, of Myers v. Louisiana Ry. & Nav. Co., 140 La. 937, 74 So. 256, 257. The rule laid down in this case, correctly ex-

pressed in the syllabus, is: 'The test to determine whether injuries to a workman arise out of his employment is not whether the cause of the injury, that is, the agency producing it, was something peculiar to the line of employment, but whether the nature of the employment was such that the risk from which the injury resulted was greater for the workman than for a person not engaged in the employment.' * * *

"The deceased and his slayer both lived in the mill quarters of defendant. They were daily associated. They often rode the same train out to their work. Their duties were different, but they had the same employer. The nature of the ill feeling between them, and the circumstances of the case, point somewhat definitely to jealousy as being the motive behind their trouble. The fact that deceased and his slayer were constantly thrown together as a result of their employment was calculated to aggravate a pre-existing enmity of possibly several months' standing. That no one seems to know why deceased threatened Williams lends force to the supposition that jealousy was at the bottom of their personal ill feeling. It is of common knowledge that daily association and contact between enemies does not, as a rule, improve their lack of cordial relations, and, when jealousy of the character shown in this case is the cause of the enmity, and where the parties, as in this case, are members of the colored race, it is not surprising that a climax tragic in character should be the result.

"Deceased's employment to defendant undoubtedly increased the danger of, and risk from, injury at the hands of his enemy, Williams. Such danger and risk were obviously greater for him than it would have been for one not engaged in this employment. The killing of deceased was an 'accident' within the meaning of Act No. 38 of 1918, § 1, amending Act

No. 20 of 1914, § 38 [LSA-R.S. 23:1021], and arose out of and incidental to his employment.

"This case, we think, falls squarely within the rule announced in Ferguson v. Cady-McFarland Gravel Co., 156 La. 871, 101 So. 248, the syllabus of which we quote:

" 'Injury to a track employee, who, while in a stooping position, was truck on the head by an iron instrument in hands of fellow employee, held an "accident" within Act No. 38 of 1918, § 1, amending Act No. 20 of 1914, § 38, defining an accident as "an unexpected or unforeseen event happening suddenly or violently with or without human fault, and producing at the time objective symptoms of an injury."

" 'A track employee who, while at work in a stooping position, was struck on the head with an iron instrument in the hands of a fellow employee, held injured by accident "arising out of and in course of employment," within Employers' Liability Act.'

"To the same effect is Dyer, v. Rapides Lbr. Co., 154 La. 1091, 98 So. 677. In that case the employee was shot from ambush and killed while making a fire in defendant's engine. The identity of the slayer was not known; consequently no motive for the killing was learned. Compensation was allowed."

The case of Verschleiser v. Joseph Stern & Son, Inc., 229 N. Y. 192, 128 N. E. 126, 127, fully supports our position and we quote from the opinion therein as follows:

"At the time in question the claimant was standing beside his truck, waiting for the 'belly' of an animal being cut up by one Mandelheim. Also waiting in line, apparently for other portions of viscera, was another trucker, Dudler.

"One Louis E. Baxter, who at the time was commissioned as a veterinary inspector of the United States government, was stationed at the slaughterhouse, and in charge of the entire building so far as

government inspection was concerned. While the claimant was waiting to have his truck loaded, some one—and the Industrial Commission has found—a fellow employee of claimant, dropped a piece of flesh about two feet long around the neck of claimant. There is some testimony that this may have been done by the veterinarian. The claimant resented the insult and assault upon him, and, in his excitement, believing the attack to have been made by Dudler, went over to him and struck him several times with the piece of flesh, and then threw it down. Dudler thereupon kicked the claimant, causing the injuries complained of. Dudler's hands were occupied, so he used his feet. * * *

"In the instant case the claimant was not the agressor, but was attending to his master's business on his master's premises at the time of the assault. He was waiting to 'lug' away viscera, and while waiting there for his master's benefit and in the work for which he was employed was assaulted. In his excitement he defended himself by a counter attack upon, as it seems, another employee, with the resulting injury to himself. He did not initiate the 'melee,' but was desirous only of transacting his master's business in peace. This fellow employee had previously, he claimed, interfered with his working. The Industrial Commission has found that claimant was engaged in the regular course of his employment when he was kicked. This is a finding of fact. The claimant was thrown on the defensive, striking Dudler with the piece of flesh, who kicked him. If claimant was right in assuming that Dudler was his assailant, his striking back would have been the natural result of the act, and it might then well be said that claimant was within the act.

"The Workmen's Compensation Law (Consol. Laws, c. 67) should be construed broadly. Compensation under it does not depend on any fault of the

master or any negligence of the servant. The law was enacted to do away with the defenses which had governed the law of master and servant. The question in each case arising under the Workmen's Compensation Law is, 'Was the injury received while engaged in the master's business?' If the servant had left his employment and was willfully pursuing designs of his own, he would not be entitled to compensation. The man who initiates an assault is doing a willful thing, but this cannot be said of the man who, surprised by physical assault or insult, reacts and in self-protection strikes another. His act is as involuntary as that of closing the eye to avoid dust, the same action and reaction which the law recognizes in its definition of manslaughter.

"Danger of employment in modern business comes from the gathering together of great and dangerous machines. There is a line of cases which hold that if an employer continues to employ a man of dangerous temper after he has become aware of the same, and he inflicts injury on a fellow workman, the workman will be entitled to recovery under the Compensation Act. This, however, is a retrogression to the old master and servant law, and clearly against the intent of the Workmen's Compensation Law, which does not look for fault, but merely insures workmen in certain employment.

"In the instant case the injury was the result of provocation and passion engendered between employees in the course of their employment on the premises of the employer while engaged in their daily work. Mcntyre v. Rodger, 41 Scot. L. Rep. 107; Pekin Cooperage Co. v. Industrial Commission, 285 Ill. 31, 120 N. E. 530.

"Under the circumstances of the instant case a workman at work for his master, who sustains injury because of his environment, is entitled to recover.

This right to recover is not nullified by the fact that his injury is augmented by natural human reactions to the danger or injury threatened or done.

"The purpose of the Compensation Act was to benefit certain workmen otherwise without legal recovery. Under its provisions they may receive compensation independent of the fault of the employer at common law or other statutes.

"As Judge Pound said in Matter of Heitz v. Ruppert, 218 N. Y. 148, 154, 112 N. E. 750, 752, L. R. A. 1917A, 344, speaking of the effect and purpose of the Compensation Act:

" 'The law has been and should be construed fairly, indeed liberally, in favor of the employee. Against its justness or economic soundness nothing can be said.'

"It may seem harsh and arbitrary to impose liability upon a master for an assault committed by a workman upon a coworkman, but the purpose and intent of the statute is to fix an arbitrary liability in the greater public interest involved. This legislation was to ameliorate a social condition—not to define a situation or fix a liability by an adherence to the old common law. Liability was imposed regardless of fault—vitally different from that under the common law. Injury by an employee moved by some cause aside from his regular duties, may be considered an inevitable, however undesirable, result— a risk which is incident to the employment of many persons. It is a burden which industry may well bear under this legislation, Hulley v. Moosbrugger, 87 N. J. L. 103, 93 A. 79; Thom v. Sinclair, (1917) A. C. 127; Pekin Cooperage Co. v. Industrial Board, 277 Ill. 53, 115 N. E. 128; Knopp v. American Car Co., 186 Ill. App. 605, 29 Yale Law Journal, 672. The claimant is entitled to the benefit of the act."

Another New York case, Leonbruno v. Champlain Silk Mills, 229 N. Y. 470, 128 N. E. 711, 13 A. L. R. 522,

involved an award of compensation under the "horse-play" doctrine, but the opinion, written by the late Justice Cardozo, is so applicable to the case at bar that we quote from it:

"The claimant while engaged in the performance of his duties in the employer's factory was struck by an apple which one of his fellow servants, a boy, was throwing in sport at another, and as a consequence lost the better part of the sight of one eye. He did not participate in the horseplay, and had no knowledge of it till injured. The question is whether the accident was one 'arising out of and in the course of employment,' within the meaning of the statute (Workmen's Compensation Law, § 3, subd. 7; Consol. Laws, c. 67).

"That it arose 'in the course of employment' is unquestioned. That is arose 'out of' employment, we now hold. The claimant's presence in a factory in association with other workmen involved exposure to the risk of injury from the careless acts of those about him. He was brought by the conditions of his work 'within the zone of special danger.' Thom v. Sinclair, 1917 A. C. 127, 142. Whatever men and boys will do, when gathered together in such surroundings, at all events if it is something reasonably to be expected, was one of the perils of his service. We think with Kalisch, J., in Hulley v. Moosbrugger, 87 N. J. L. 103, 93 A. 79, that it was 'but natural to expect them to deport themselves as young men and boys, replete with the activities of life and health. For workmen of that age or even of maturer years to indulge in a moment's diversion from work to joke with or play a prank upon a fellow workman, is a matter of common knowledge to every one who employs labor.' The claimant was injured, not merely while he was in a factory, but because he was in a factory, in touch with associations and conditions inseparable from factory life. The risks of such as-

sociations and conditions were risks of the employment. Thom v. Sinclair, supra; Matter of Redner v. H. C. Faber & Son, 223 N. Y. 379, 119 N. E. 842. * * *

"The risks on injury incurred in the crowded contacts of the factory through the acts of fellow workmen are not measured by the tendency of such acts to serve the master's business. Many things that have no such tendency are done by workmen every day. The test of liability under the statute is not the master's dereliction, whether his own or that of his representatives acting within the scope of their authority. The test of liability is the relation of the service to the injury, of the employment to the risk."

In Gillmore v. Ring Const. Co., 227 Mo. App. 1217, 61 S. W. (2d) 764, 766, an employee had reported for work and because of prevailing weather conditions was instructed to wait and see whether the conditions would improve to the extent that the work might proceed. While standing around a fire, awaiting further instructions from his employer, an argument ensued and one of his fellow employees pushed the claimant and he slipped and fell, breaking his leg. In holding that the injury was compensable under the compensation act, the Court said:

"The claimant was an employee. He had reported for work and in conformity with the conditions under which the work was being done for his employer. He was doing what his foreman told him to do, that is, to wait on the job for development as to weather conditions. Complainant was obeying his master's orders. He was as much in his line of duty as he would have been if pouring cement. Complainant was waiting at what may be inferred to be the accustomed place, that is around the fire with other employees, on this December morning. Being around that fire and waiting was incident to his employment and while so situate an accident occurred within the meaning set out in par. (b) of section

3305, Mo. St. Ann. [V.A.M.S. § 287.020] (Workmen's Compensation Act, § 7, as amended by Laws 1931, p. 382, § 1.)

"Employers, whose work require that men wait upon the job for work conditions, ought not to be heard to say that an accident, occurring out of the very conditions presented by the required waiting, is not compensatory. Men standing and waiting around an open fire on a damp December day naturally mill around and talk and even joke and indulge in what might be termed 'horseplay.'

"Where the purpose of a law is to do away with the issue of negligence, accident, assumed risk, contributory negligence, and the like, it follows that the law should be liberally construed.

"We conclude, from the undisputed facts in evidence in this case, that as a matter of law it should be held that the accident wherein the compainant was injured arose out of and in the course of his employment. Keithley v. Stone & Webster Engineering Corporation, 226 Mo. App. 1122, 49 S. W. (2d) 296, and Hager v. Pulitzer Pub. Co., Mo. App., 17 S. W. (2d) 578."

To quote from all the cases which sustain our view that the judgment of the lower court should be affirmed would extend this opinion to undue lengths. Ample support for our holding is found in the following authorities: Kaiser Lbr. Company v. Industrial Commission, 181 Wis. 513, 195 N. W. 329; Distefano v. Standard Shipbuilding Corporation, 203 App. Div. 145, 196 N. Y. S. 452; Indemnity Ins. Company v. Scott, Tex. Com. App., 298 S. W. 414, affirming Tex. Civ. App., 278 S. W. 347; Parker v. Federal Steam Nav. Co., 95 L. J. K. B., N. S. (Eng.) 664, 18 B. W. C. C. 469, W. C. & Ins. Rep. 136; Schultz v. Chevrolet Motor Co., 256 Mich. 393, 239 N. W. 894; Humphrey v. Tietjen & S. Milk Co., 235 App. Div. 470, 257 N. Y. S. 768, affirmed 261 N. Y. 549, 185 N. E. 733; Kline v. Pennsylvania R. R. Co., 101 Pa. Super. 539;

844

Cooley v. Glidden Buick Corp., 271 App. Div. 762, 64 N. Y. S. (2d) 466; Longoria v. Langner, 271 App. Div. 762, 64 N. Y. S. (2d) 509; Chanin v. Western Union Tel. Co., 271 App. Div. 763, 64 N. Y. S. (2d) 670; Pascaliacchio v. Mule, 271 App. Div. 762, 64 N. Y. S. (2d) 725; Vesper v. Colonial Radio Corp., 274 App. Div. 859, 81 N. Y. S. (2d) 794; Department of Taxation & Finance v. Roth Grill, Inc., 272 App. Div. 852, 70 N. Y. S. (2d) 337; Associated Employers Lloyds v. Wiggins Tex. Civ. App., 208 S. W. (2d) 705; Badger Furniture Company v. Champeau, 195 Wis. 134, 217 N. W. 734; Louie v. Bamboo Gardens, 67 Idaho 469, 185 P. (2d) 712; Stephens v. Spuck Iron & Foundry Company, 358 Mo. 372, 214 S. W. (2d) 534; Newell v. Moreau, 94 N. H. 439, 55 A. (2d) 476; Sanders v. Jarka Corporation, 1 N. J. 36, 61 A. (2d) 641; Cole v. I. Lewis Cigar Mfg. Company, 3 N. J. 9, 68 A. (2d) 737; Grant v. Grant Casket Co., 137 N. J. L. 463, 60 A. (2d) 817; Burns v. Merritt Engineering Co., 302 N. Y. 131, 96 N. E. (2d) 739; Hegler v. Cannon Mills, 224 N. C. 669, 31 S. E. (2d) 918; Dillon's Case, 324 Mass. 102, 85 N. E. (2d) 69; Turner v. Bluff City Lbr. Co., 189 Tenn. 621, 227 S. W. (2d) 1; Gillmore v. Ring Construction Co., 227 Mo. App. 1217, 61 S. W. (2d) 764; Milton v. T. J. Moss Tie Co., La. App., 20 So. (2d) 570; Stasmas v. State Industrial Commission, 80 Okl. 221, 195 P. 762, 15 A. L. R. 576.

 █ Summarizing our holding, it is that the employment and nature of the work brought Pittman and Stewart in close contact with each other, that one of the hazards of this contact was that of an assault committed by one employee upon another, that under our compensation law the injured employee is entitled to compensation for injury resulting from such a hazard the same as he would be if he had been injured by the machine in proximity to which he was required to work, and that the injury from this hazard arose out of and in the course of Pittman's employment. There was sufficient evidence to support the award of the compensa-

tion commission and the judgment of the circuit court affirming that award is hereby affirmed by us.

Affirmed.

**Alexander, Lee, Kyle, Holmes, Arrington** and **Ethridge, JJ.**, concur.

**Roberds, J.**, (dissenting).

We have crossed the Rubicon. The Court has now held that every employer, who is within the Workmen's Compensation Act, is liable for every injury inflicted by one employee on a co-employee while working together at the place of work, even though the injury results from personal malice on the part of the wrongdoer towards the injured employee. There is no claim here that the injury arose out of the employment other than in the sense that both were employed and were working at, or about, the same place. In other words, every employer is the guarantor against eccentricities, habits, temperament, disposition, inclinations, emotions, and foolish whims of all of his employees. With deference to my brethren I do not think the phrase ''arising out of * * * employment'', as used in the Act, means that, nor that the Legislature intended for it to mean that. Now, as to the meaning of the phrase:

So far as this Court is concerned we have settled upon the definition of that meaning in the opinion this day handed down sustaining a suggestion of error in the case of Brookhaven Steam Laundry, v. Watts, Miss., 59 So. (2d) 294. I can do no better than to quote what we there say:

''In holding that the claimants are not entitled to recover in this case we do not lose sight of the fact that the Workmen's Compensation Act, Chapter 354, Laws of 1948, should be given a liberal interpretation in order to effect its salutary purposes. Deemer Lumber Co., v. Hamilton, 211 Miss. 673, 52 So. (2d)

634. But we must also not lose sight of the fact that it is the duty of the court to construe the Act as it is written. In section 2(2) of the Act the word "injury" is defined as follows: ' "Injury" means accidental injury or accidental death arising out of and in the course of employment, and includes injuries to artificial members; and also includes an injury caused by the wilful act of a third person directed against an employee because of his employment, while so employed and working on the job.'

" 'While the interpretation of the phrase "arising out of the employment", as used in workmen's compensation acts to define the injuries compensable thereunder, has given rise to many questions of considerable difficulty, as to which the decisions are not harmonious, there is general agreement upon the proposition that an injury arises out of an employment when but only when there is a causal connection between such injury and the conditions under which the work is required to be performed, it is not sufficient that the employee is at the place of his employment at the time of the accident and doing his usual work.' 58 Am. Jur., Workmen's Compensation, p. 718, Par. 211.

"In discussing the meaning of the words 'Arising out of and in the course of employment' Schneider, often quoted by the courts in compensation cases, says: 'As has already been indicated, it has been held quite uniformly that an injury arises out of the employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. * * * The fact that one is working at the time he is injured, and would not have suffered injury had he not been employed, does not show a causal connection between the employment and the injury, nor will a showing that the employment brought the party to

the place where injured and that he would not have met with the accident elsewhere show a proximate causal relation between the employment and the injury.' 'The risk must be reasonably incidental to the employment * * *. There must be some connection between the injury and the employment other than the mere fact that the employment brought the injured party to the place of injury.' Schneider, Vol. 6, pages 7, 32 and 33.''

Thus it is seen we have adopted the rule there must be a causal relation between the employment and the injury—something in the relation or about the work—which produces the injury, such, for instance, as a dispute with a foreman over the manner of doing the work, or that the act which caused the injury was in furtherance of the master's business.

Logically, it is difficult to see any causal relation whatever between this assault and the work at hand. It did not promote the work. The employees, at that time, were not about the work. Their acts had nothing to do with the employment. Indeed, they had turned aside and were about their own play, which ultimately resulted in a malicious assault by Stewart, prompted solely and alone by personal anger and animosity. Stewart himself testified he was as "mad as an old hen", and the nature of the weapon he used, the manner of its use and the unfortunate result all show conclusively this was an angry malicious attack.

I turn now to the specific holdings of the courts as to liability for injuries resulting from skylarking, or fooling, as well as from malicious assaults from personal animosity. I discuss both because both are here involved, although in the final analysis the nature of the act is reduced to a willful personal assault.

Now, as to skylarking, horseplay, or fooling: The rule is stated in 58 Am. Jur., pg. 769, Sec. 268, in these words: "It is generally held that no compensation is recoverable under the workmen's compensation acts, for injuries sus-

tained through practical joking or sportive acts done independently of and disconnected from the performance of any duty of the employment, since such injuries cannot ordinarily be regarded as having arisen out of the employment within the meaning of the acts''.

There is a note on the subject beginning at page 540 of 13 A. L. R.. The annotator states this to be the rule: "It is generally held that no compensation is recoverable under the Workmen's Compensation Act, for injuries sustained through horseplay or fooling which was done independently of and disconnected from the performance of any duty of the employment, since such injuries do not arise out of the employment within the meaning of the acts''. Some forty or fifty cases are cited, from various states of the union, to sustain the stated rule. I will mention only a very few by way of illustration:

Where an employee was injured on an elevator while scuffling with fellow employees. Feda v. Cudahy Packing Co., 102 Neb. 110, 166 N. W. 190.

Where a domestic servant, while in the course of her duties, was struck and blinded by a rubber ball playfully thrown by another servant. Wilson v. Laing, (S. C.) 46 Scot. L. R. 843.

Where an employee was injured in the eye by a stick thrown in play by a fellow employee. Pierce v. Boyer-Van Kuran Lbr. & Coal Co., 99 Neb. 321, 156 N. W. 509, L. R. A. 1916D. 970.

Where there was an injury by the forcing of compressed air into the body of a workman engaged in the performance of his duties, by fellow employees who used a hose upon him in a spirit of fun. Tarpper v. Weston-Mott Co., 200 Mich. 275, 166 N. W. 857, L. R. A. 1918E, 507.

No compensation was allowed in any of these cases. Many more could be cited under this note.

The foregoing annotation was followed by others in 20 A. L. R. pg. 882; 36 A. L. R. pg. 1469, and 43 A. L. R. pg. 492. The same rule as to non-liability of skylarking,

or horseplay, is deduced in all of them and perhaps a hundred cases, or more, are cited to sustain the stated rule. I mention only two by way of contrast. Where claimant, while going about his work, was playfully grasped from behind and felled by a fellow employee, his leg being broken by the fall, no recovery could be had. Washburn's Case, 123 Me. 402, 123 A. 180.

Where an employee, angered by directions given him by another employee, hit the claimant with a steel rod and injured him. Maguire v. James Lee & Sons Co., 273 Pa. 85, 116 A. 679.

There are some four or five exceptions to the non-liability rule but the facts of this case do not bring it within any of them.

### As to Personal Ill Will Assaults:

As stated, I think this, in the last analysis, was a personal assault from anger. Stewart said that himself.

The rule is stated in 6 Schneider, pg. 120 (2) in the following words: "Generally, if one employee assaults another employee solely to gratify his feeling of anger or hatred, the injury resulting from the voluntary act of the assailant cannot be said to arise either directly out of the employment or as an incident of it. Compensation is usually denied under such circumstances."

58 Am. Jur., pg. 768, Sec. 266 sets out the rule in these words: "* * * it is generally held that an injury from an assault on an employee committed by one solely to gratify his personal ill will, anger or hatred does not arise out of the employment within the meaning of the Workmen's Compensation acts, although there are decisions to the contrary".

There are notes on this question in 15 A. L. R. pg. 594; 21 A. L. R. pg. 760; 29 A. L. R. pg. 441; 40 A. L. R. pg. 1126; and 72 A. L. R. pg. 113. The general rule is stated in 15 A. L. R. supra, in this language: "If the assault on an employee was committed by another solely to gratify his personal ill will, anger, or hatred, it is generally

held that the injury did not arise out of the employment within the meaning of the workmen's compensation acts''. The same rule is deduced in the subsequent annotations. Many, many cases are cited to support the rule. Time and space forbid my citing them. I will mention only enough to illustrate the difference between cases of liability and non-liability.

In Fey v. Bobrink, 84 Ind. App. 559, 151 N. E. 705, the assault of one employee by another was the result of a quarrel over the manner of doing the work. There was liability. On the other hand, compensation was denied where an employee renewed a quarrel with a fellow workman during a rest period and killed such workman It was said that although the employment presented the opportunity for the injury, they were not connected with the employment or incident thereto. Martin v. Sloss-Sheffield Steel & I. Co., 216 Ala. 500, 113 So. 578. Compensation was allowed for the death of a mill superintendent who was killed by another employee whom he had discharged, and with whom he had had an argument about leaving the factory. Field v. Charmette Knitted Fabric Co., 245 N. Y. 139, 156 N. E. 642.

I will mention only a few other cases among many which might be cited, that are perhaps more in point with the case at bar than those above cited.

Bruton and deceased were in the employ of a furniture company, Bruton as a sweeper by day and deceased as a night watchman. Between 1:00 and 3 o'clock at night Bruton, on account of domestic troubles between the two men, shot and instantly killed deceased while he was on duty as a night watchman. The claim was not compensable. The court quoted, apparently with approval, from the Supreme Judicial Court of Massachusetts, In re Employers' Liability Corporation, 215 Mass. 497, 102 N. E. 697, this pronouncement: " 'It (the injury) arises "out of" the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under

which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises "out of" the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment.' " The court went on to say that the causative danger must be peculiar to the work; it must be incidental to the character of the business. The claim here was held to be non-compensable. Harden v. Thomasville Furn. Co., 199 N. C. 733, 155 S. E. 728, 729. It might be here noted that Stewart would just as likely and quickly have gone haywire and attacked Pittman had they been at a baseball game as he did under the circumstances here. The work did not in the slightest cause the assault.

In Industrial Commission v. Strome, 107 Colo. 54, 108 P. (2d) 865, claimant, while discharging his duties as an employee, was struck on the head by a shovel wielded by a fellow employee. The motive for the attack was not shown. The court held that this injury did not "arise out of" the employment. The court remarked "The general rule, with the reasoning supporting it, seems thus fairly stated: 'Ordinarily, assault by co-employees cannot be considered as incidental to the employment; and so an injury to an employee assaulted by a fellow workman does not generally arise "out of the employment".' " The court observed that the burden of showing that the injury arose out of, or was caused by, the employment was upon the claimant.

In January-Wood Co. v. Schumacher, 231 Ky. 705, 22 S. W. (2d) 117, 120, a night watchman on duty was killed by a nonemployee because of domestic difficulties. The court observed that the Kentucky statute,

like ours, requires that the injury shall arise out of and in the course of the employment, two distinct factual requirements. The court said, "The Compensation Act does not afford compensation for injuries or misfortunes which are merely contemporaneous or coincident with the employment or collateral to it. There must be a direct causal connection between the employment and the injury. That is an essential connecting link to the operation of the act. It is absent in this case. Schumacher's death cannot be traced to any cause set in motion in his employment. We cannot reason from the sequel to the cause."

In Plouffe v. American Hard Rubber Co., 211 App. Div. 298, 207 N. Y. S. 373, the claimant, angered when a fellow employee took a pencil from behind claimant's ear, slapped the fellow employee, who retaliated by striking the claimant on the jaw, causing an abscessed cheek, was not permitted to recover, the court holding that the injury did not arise out of and in the course of the employment.

In Griffin v. A. Roberson & Son, 176 App. Div. 6, 162 N. Y. S. 313, 315, there was a personal assault upon claimant by a fellow employee. The injury was not compensable. The court said "The case at bar is very similar in its essential and controlling features to the case of an accident arising out of horseplay. Diametrically opposite motives, it is true, occasion the injurious acts in the two classes of cases; but in both classes of cases the purpose is to gratify a personal desire. In one class of cases, the motive is a spirit of frivolity or playfulness. In the other the motive is anger, animosity, or vindictiveness. But in both the purpose is not to serve the master's interest, but to serve a momentary personal emotion of the employees".

In Scholtzhauer v. C. & L. Lunch Co., 233 N. Y. 12, 134 N. E. 701, 702, claimant was shot and killed by a fellow employee while both were on duty, because she refused to go out with him. The claim was non-com-

pensable. The court, responding to the argument of claimant, said, "The authorities cited by the respondent are not in point. The injury in such cases all arose over some dispute as to the work to be done by the employee or in some other way were directly traceable to and connected with the employment. Here the injury to the daughter, while it arose during the course of, did not arise out of, the employment. The only suggestion that the employment had any bearing on the injury was that the employment brought the two persons together. The murder, however, arose not out of the employment, but because the deceased refused to accept Arthur's invitation, and his anger by reason thereof."

So was it in the case at bar. Stewart assaulted Pittman, not because they were working for the same master or because the assault had any relation, or causal connection whatever, with the work, but purely because of anger, aroused instantly and without justification, towards Pittman.

The majority opinion cites, quotes from, and evidently relies upon Horovitz, "Current Trends in Workmen's Compensation"; Chambers v. Union Oil Co., 199 N. C. 28, 153 S. E. 594; Hartford Accident & Indemnity Co. v. Cardillo, 72 App. D. C. 52, 112 F. (2d) 11; Ferguson v. Cady-McFarland Gravel Co., 156 La. 871, 101 So. 248; Keyhea v. Woodward-Walker Lbr. Co., La. App., 147 So. 830; Verschleier v. Stern & Son, 229 N. Y. 192, 128 N. E. 126; Leonbruno v. Champlain Silk Mills, 229 N. Y. 470, 128 N. E. 711, 13 A. L. R. 522; and Gillmore v. Ring Const. Co., 227 Mo. App. 1217, 61 S. W. (2d) 764.

It will be helpful to briefly examine these authorities.

Without intending the slightest criticism, I think it proper to observe that the main business of Mr. Horovitz, as commonly reputed, is the representation of claimants in compensation cases. It is noted, too, that the quotations are mainly expressions of what he thinks is, or ought to be, the law in these cases. He says in one place "* * * my view on the matter is quite de-

854

termined''. At least, these considerations should have some bearing upon the weight to be given his comments.

In the Chambers case the observations of the court applied only to horseplay. In the case at bar, the injury was the result of a wilful attack. In addition, the facts are not the same in the two cases. In the Chambers case both claimant and Loven were truck drivers delivering oil. Loven had been held up and either robbed, or attempted to be robbed, of the money of his employer, collected for the sale and delivery of oil. The drivers carried on their persons large sums of money of their employer. Loven had armed himself with a pistol for protection of his employer's property. He threw the pistol into his truck and it accidentally discharged striking claimant in the foot. Loven was about his master's business when the injury occurred. The pistol was being used to protect the employer's property. No wilful assault was involved.

The Hartford case has been given undue weight because Justice Rutledge, the writer of the opinion, later became a member of the Supreme Court of the United States. However, I think it must be admitted that much of the meaning is obscured by the language used in the opinion. Also a considerable part of the opinion is a discourse upon philosophy and social relations—not an analysis of legal principles. But the case is not authority for the holding in the case at bar. The facts are entirely different. There Bridges and Downey were co-workers loading vegetables onto a truck for their employer. Downey was the checker in charge of the work, giving directions to Bridges. In the course of giving such directions, and as they proceeded with the work, Downey called Bridges a nickname, which Bridges resented, and as Downey persisted, Bridges called him a vile name, and Downey struck Bridges, the claimant. At once it is seen Downey was the superior of Bridges, had a right to and did give him directions, and that this controversy arose through the relation of superior and

inferior and out of performance of duties. That is quite a different case from the one at bar. But, in addition to this, the statute there involved created a presumption " 'in the absence of substantial evidence to the contrary —(a) That the claim comes within the provisions of this chapter' " [72 App. D. C. 52, 112 F. (2d) 13]. No such statute is involved in the case under consideration.

In the Ferguson case claimant was about his work when he was hit by a co-employee with an iron bar. No motive was shown for the act; whereas in the case at bar the motive was shown to be entirely personal. Also, Louisiana had a statute which defined accident, for which the employer was liable, as " 'An unexpected or unforseen event happening, suddenly or violently, with or without human fault and producing at the time objective symptoms of injury' "i [156 La. 871, 101 So. 249].

The Keyhea case dealt with the same statute and cited the Ferguson case as authority for its holding.

The Verschleier case is authority for the holding of the majority. That decision was by a divided court.

In the Leonbruno case the claimant took no part in the horseplay. He was an innocent bystander. Some of the cases say that fact constitutes an exception to the rule of non-liability in horseplay cases.

In the Gillmore case the trouble arose over discussion of union rules and their violation as applying to the work; also the court said, "It is inferable from from the evidence that the conversation (giving rise to the assault) was concerning work on the construction in hand" [227 Mo. App. 1217, 61 S. W. (2d) 765]. In other words, the controversy arose over matters pertaining to the work the employees were performing.

Thus it is seen that in the main cases cited in the majority opinion and from which extensive quotations are made, only one supports the conclusion reached in

that opinion and that was by a divided court. This becomes an important fact when there are hundreds of cases dealing with the questions under consideration.

I stated above I did not believe the Legislature intended the result reached in the able controlling opinion. I say that for two reasons. The first is if it intended that liability could rest merely upon the fact of association of employees there was no need whatever to require the condition that the injury must arise out of the employment. The phrase "arising out of employment" might as well have been left out of the act. The section requires the injury must "arise out of and in the course of the employment". Both facts must exist. If mere association is enough, the first requirement is useless.

The second reason is that we have judicial notice of the public policy of this State to induce industries to locate herein. That is shown by statutory enactments, tax exemptions and creation of boards, supported by public funds, charged with duties to induce industries to come into the state. The carte blanche liability imposed upon such employers by the rule laid down in the majority holding must necessarily discourage new industries from coming into this state and encourage those already here to move away. I don't believe the Legislature would have intentionally done that. Seemingly they are faced with two alternatives; One is to carry large insurance coverage, at greatly increased premiums in view of almost certain liability, and the other might be to engage a psychiatrist to go about among the employees and weed out those likely to run amuck, and discharge them. However, that would probably bring about two unsatisfactory results: The specialist might overlook some employee of peculiar tendencies or eccentricities, and those dismissed would likely sue for damage for wrongful discharge.

**McGehee, C. J.,** (dissenting).

I think that the only theory upon which liability should be sustained in this case is that the employer knew that the fellow-employee Stewart, who inflicted the injury upon Pittman, was a man of dangerous disposition and likely to inflict injuries upon a fellow-employee, not that negligence is necessary to constitute liability in these cases but such proof would have shown that the injury complained of was due to an industrial hazard or risk incident to this employee being required to be associated in his work with a person who has sustained an alleged serious injury that caused him to be of a violent and dangerous disposition. The evidence offered to establish this fact was excluded when offered and, therefore, the proof was not fully developed, and I think that the case should have been reversed and remanded for a full development of the proof upon that issue.

I am of the opinion that while there is ample authority to support the decision reached in the controlling opinion herein, the cases relied upon in the dissenting opinion of Mr. Justice Roberds are more logical and express what is to my mind the better view for this Court to adopt. The Court, however, has seen fit to adopt the more liberal view, to which I shall, of course, subscribe in future cases. For the time being I join in the dissenting opinion for the reasons stated above.