[Civ. No. 5952. Second Appellate District, Division One.—May 3, 1928.]

PACIFIC EMPLOYERS INSURANCE COMPANY (a Corporation), Petitioner, v. DEPARTMENT OF INDUSTRIAL RELATIONS, etc., RALPH R. POWELL et al., Respondents.

F. Britton McConnel for Petitioner.

G. C. Faulkner for Respondents.

SHAW, J., *pro tem.*—This is a proceeding by the petitioner to review an order of the Industrial Accident Commission, which, under the present law dividing the functions of the state government into various departments, is a part of the Department of Industrial Relations. Petitioner is the insurance carrier of Delsie L. Isley, and an award was made against it on account of injuries sustained by one Ralph R. Powell while engaged in wrecking a barn and while in the employ of said Delsie L. Isley.

 From the evidence before the Commission, it appears that the said Delsie L. Isley was the owner of two trucks, and was engaged in the general trucking and hauling busi-

ness under the name of "Isley Transfer." This business seems to have been entirely conducted and managed by her husband, Everett Isley, and the business is usually referred to in the record as his business; in fact, the evidence shows but little connection of Delsie L. Isley with the business, except that she was the owner of the trucks used therein, but as petitioner concedes that the evidence is sufficient to show that Powell was in her employ, no discussion of it from this standpoint is necessary. The scope of the business, as stated by Everett Isley, was that he hauled "anything at all." He also said that he had engaged in one other wrecking job about three or four months previous to the wrecking of the barn, but that his wife had no interest at all in that job. Powell, who was the only other witness on this point, stated that the principal business of the Isley Transfer was hauling all kinds of stuff, general hauling or draying, and that to his knowledge "Mr. Isley" had moved buildings before.

Everett Isley learned that certain contractors for whom he was doing hauling had for sale a house and a barn. Desiring to provide himself and Delsie L. Isley with a place of abode, he bought this house and barn and paid for them by a credit on his wife's account with the contractors. He had the house moved upon a lot, which had already been bought for residential purposes in the name of his wife; and as soon as the house was moved and made ready he and his wife began living in it. He proceeded to wreck the barn and haul the materials composing it to this same lot. Part of these materials were used in repairing the house after it had been moved. It was his original intention to use the remainder thereof in building a garage on this lot, but this purpose was abandoned and the surplus materials were sold.

Powell was engaged in tearing the barn apart, and in the course of that work received the injuries for which the award was made. He was engaged by Everett Isley a short time before these injuries were received under an employment by which he was promised steady work when there was any work to be done, and was to work at anything Isley had to do and to be paid fifty cents an hour. After doing a couple of jobs of hauling, he was set by Isley at the work of tearing down the barn, doing no hauling

in connection with it, and worked a little less than two days thereat before he was injured. After the materials of the barn were taken apart they were hauled to the lot above mentioned by Everett Isley himself, from time to time, as he had a little leisure from other jobs. There were three men altogether working at the wrecking of the barn, who were each paid four dollars per day, and the testimony is undisputed that they could complete the job in not more than five days at a labor cost of not more than sixty dollars.

The Industrial Accident Commission found that the applicant, Powell, was employed by Delsie L. Isley and not by Everett Isley, and that "the work in which applicant was engaged at the time of said injury was connected with the regular business of the employer and was not casual." There were, of course, other findings to which it is unnecessary to refer.

Petitioner claims that there is no evidence on which the findings above quoted as to the nature of the work may be based, and that this finding does not cover the whole issue. The solution of the problems presented by this claim depends upon the following provisions of section 8 of the Workmen's Compensation Insurance and Safety Act of 1917 (Stats. 1917, p. 835): "(a) The term 'employee' . . . shall be construed to mean: Every person in the service of an employer as defined by section seven hereof . . . excluding any person whose employment is both casual and not in the course of the trade, business, profession or occupation of his employer, . . . (c) The term 'casual' as used in this section shall be taken to refer only to employments where the work contemplated is to be completed in not exceeding ten working days, without regard to the number of men employed, and where the total labor cost of such work is less than one hundred dollars. The phrase 'course of the trade, business, profession or occupation of his employer' shall be taken to include all services tending toward the preservation, maintenance or operation of the business, business premises or business property of the employer. The words 'trade, business, profession or occupation of his employer' shall be taken to include any undertaking actually engaged in by him with some degree of regularity, the trade name, articles of incorporation or principal business of the employer to the contrary notwithstanding."

There can be no doubt that Powell's employment on the barn-wrecking job was casual, as that term is defined in the statute above quoted. The work contemplated on that job was to be completed in less than ten working days at a total labor cost of less than one hundred dollars. We do not think the situation is altered in this respect by the fact that he was under a general engagement to work for Isley. The wrecking of the barn was a separate and independent piece of work which Powell undertook in response to a specific order from Isley, and it must be considered by itself in determining whether it was casual. (*Rissman* v. *Industrial Acc. Com.*, 190 Cal. 619 [213 Pac. 991].)

The question remains whether Powell's work on the barn was "not in the course of the trade, business, profession or occupation of his employer." Petitioner contends that the finding of the Commission that the work "was connected with the regular business of the employer" does not meet the issue on this matter, and its argument has much force, but we need not determine the point, because we think the finding, even if sufficient in form, finds no support in the evidence. The employer, it must be remembered, was Delsie L. Isley. Her business, according to all the evidence, was trucking and hauling. No other evidence was needed to show that it did not include the wrecking of buildings. While Everett Isley testified that he had previously wrecked one building, he also said that his wife had no interest in that job, and, hence, it cannot be used to amplify the scope of her business. Under the peculiar circumstances of the case, perhaps Powell's testimony that "Mr. Isley" had moved buildings before can be construed to refer to something done by him in carrying on the business of Delsie L. Isley, but if so, it covers merely the moving, not the wrecking, of buildings. There is nothing to show that Delsie I. Isley had engaged with some or any degree of regularity in the wrecking of buildings. Neither was Powell's service one tending toward the preservation, maintenance, or operation of the trucking business, or of the business premises or business property used in such business. The respondent suggests that it might be so classified because Everett Isley intended to use a part of the materials taken from the barn in building a garage; but there is no direct testimony as to the purpose for which that garage was to be used, and the

inference from the fact that it was to be placed on the lot where Mr. and Mrs. Isley had their residence—nothing else appears as a basis for any inference—would be that it was to be used for some purpose connected with their residence and not with the business. In fact, a part of the lumber was used in repairing the dwelling-house and the remainder was sold, and neither of these operations was in the course of any business carried on by Delsie L. Isley.

The petitioner also contends that the work in question was not covered by the insurance policy which it had issued to Delsie L. Isley, but in view of our conclusion on the point already discussed, it is not necessary to pass upon this contention.

The award is annulled.

Conrey, P. J., and Houser, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on May 26, 1928, and the following opinion then rendered thereon:

THE COURT.—The respondent Department of Industrial Relations has filed a petition for a rehearing in which several contentions are stated at some length. Most of the points so made were at least suggested in the brief originally submitted to us and were considered by us before the decision was made, although some of them are not discussed in the opinion. A large part of this petition seems to be based on a misunderstanding of the language of our opinion, which has apparently led counsel to believe that we held the particular work in which Powell was engaged when he was hurt to be the personal business of Everett Isley. Following the example of the witnesses, we referred to the various acts of Everett Isley as being his acts, without specifically stating that they were done by him for Delsie L. Isley, but we fully understood that all of these acts were done by him as her agent, except in the single case of the previous wrecking job to which he testified. We considered the case in the same aspect, except as to that one job, as if all the acts referred to had been done by Delsie L. Isley in person.

As to the casual nature of Powell's employment, respondent complains that the opinion fails to distinguish between

the employment and the work done under it. Perhaps the words "specific order" used in the opinion did not fully express our meaning; but we had the distinction referred to in mind and were of the opinion that the evidence showed a separate employment of Powell to work upon the barn, which was distinct from his employment to work in the trucking business.

■ Respondent also argues that this court was in error in its statement that Delsie L. Isley had no interest in the previous wrecking job done by Everett Isley. We have again carefully read the evidence quoted in support of this argument, but can find therein no reason for a different conclusion from that previously reached by us. However, even if we were wrong on that point, a single wrecking job done prior to the one in question would not be sufficient to show that Delsie L. Isley had engaged in the wrecking of buildings "with some degree of regularity," and, hence, by the terms of the act, would not effect an extension of her business beyond its previous scope.

■ Respondent also claims that because the barn, having been paid for from the proceeds of Delsie L. Isley's business, was her property, therefore any work done on it was incidental to and done in the course of that business. This is not the criterion established by the statute, and if it were adopted it would lead to extreme consequences. The testimony showed that all of the living expenses of the Isleys were paid out of the proceeds of this same business, and hence Delsie L. Isley was no doubt the owner of all food bought for their personal use; but if she had called Powell into her kitchen to peel potatoes for the family dinner and he had cut himself while so doing, it would hardly be contended that the cut was received by him in the course of her business, and if such contention were made it would receive scant attention. A number of cases are cited which hold that an employee may recover compensation for injuries received by him in doing work which, although not strictly within the scope of his particular employment, is done in the course of the employer's business; but they are clearly not applicable here where the work was within the scope of Powell's special employment, but was not done within the course of the employer's business.

Another contention is that because the wrecking of the barn was done in order to put its materials into a haulable condition, such wrecking was incidental to the business of hauling. Several cases are cited where it was held that work which appeared to be somewhat out of the line of the employer's business was nevertheless done in the course of that business. But in all of them it appeared that the work was done at the employer's place of business and was to some extent connected with and arose out of his business operations. No case is cited which is at all similar in its facts to that now before us. This contention would lead to the conclusion that the business of every common carrier includes as an incident the manufacturing of the commodities hauled by such carrier, although such manufacturing had never been engaged in before the occasion which gave rise to the question.

■ Respondent also refers to the presumption declared by section 8, subdivision (b), of the act, and claims that this evidence on which a finding that Powell was an employee subject to the act may be based, even in the face of evidence showing the facts to be otherwise. The decisions are in conflict on the question whether a presumption may thus be used to support a finding; but under either rule the presumption referred to is of no avail to respondent. On this subject the act provides: "Any person rendering service for another, other than as an independent contractor, or as expressly excluded herein, is presumed to be an employee within the meaning of this act." Hence when it appears, as it does in this case, that the person rendering service is expressly excluded by the act from its scope, there is no presumption as to him.

■ Respondent also claims that the court has exceeded its powers by weighing the evidence. If by weighing the evidence is meant its examination for the purpose of determining which of two or more conflicting statements or inferences from the evidence should be accepted as the basis for a finding, we agree that this court has no power to perform that function in this case. But it does have power to examine the evidence for the purpose of ascertaining whether, on any reasonable view that may be taken of it, accepting only the statements and inferences most favorable to the findings in case of conflict or uncertainty, it will

support the findings of the Industrial Accident Commission as to jurisdictional facts essential to its award, and to set the award aside if no such support for it is found. We think we have gone no further in this case.

A rehearing is denied.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 2, 1928.