## NATIONAL SURETY CORP. *v.* KEMP.

May 11, 1953

No. 38593 31 Adv. S. 50 64 So. 2d 723

538

*Levingston & Bizzell* and *Young & Daniel,* for appellant.

*John T. Smith* and *W. D. Jones,* for appellee.

ARRINGTON, J.

This is an appeal from the Circuit Court of the Second Judicial District of Bolivar County affirming an award of the Workmen's Compensation Commission to the appellee, Victor T. Kemp.

The facts, which are not in dispute, are as follows: The appellee was employed in June, 1949, by the Skene Gin Company, a partnership composed of W. E. Kent and his aunt, Mrs. R. M. Dakin. On July 18, 1950, Mrs. Dakin conveyed her interest to her husband, R. M. Dakin. The appellee was a veteran and when he was first employed by Skene Gin Company in June, 1949, he was receiving benefits under the on-the-job-training program provided by the Servicemen's Readjustment Act, commonly known as the "G. I. Bill of Rights." This training period extended for a two-year period ending about June 1, 1951. During this period of training, the appellee assisted in erecting a new gin for the Skene Gin Company, and assisted in the operations of the gin. At the expiration of the training period, Kemp having become an excellent gin operator, the Skene Gin Company, in order to retain his services, entered into an oral contract of employment with Kemp. This contract or agreement was to the effect that Kemp was to be employed on a yearly basis for the sum of $250.00 per month and was to be furnished a home in which to live. The contract provided that he was to be in full charge of the gin during the ginning season and to make such repairs as were necessary to the gin and to do other jobs. During the dormant, or off-season, he was to do such work as he was directed to do by either of the partners. These other jobs principally consisted of carpentry work, plumbing, painting, and general repair work on the farm buildings of the respective partners. Mr. Kent was general manager for the Skene Gin Company and according to the evidence, in order to have Kemp available at the ginning season, it was necessary to furnish him regular employ-

ment. The appellee's salary was paid monthly by the Skene Gin Company. The evidence further shows that Mr. Kent, one of the partners of the Skene Gin Company, was a candidate for the office of sheriff and tax collector of Bolivar County in the Democratic primary of August, 1951. In order to further his campaign for this office, he had some banners or signs painted approximately sixteen feet in length and three feet wide. These banners were to be hung over the street of the various towns in Bolivar County. Mr. Kent instructed Kemp, the appellee, to hang up these signs. On Monday, July 9, 1951, Kemp, as he was ordered to do, proceeded, with the assistance of two other men, to hang the signs. On Tuesday, July 10, while putting up one of the banners at Pace, Mississippi, the appellee received serious injuries as the result of electrical burns and a fall, which required hospitalization.

Kent was the only witness who testified at the hearing before the attorney-referee. Two statements prepared by one of the insurance carrier's attorneys and signed by Kent were introduced in evidence, over the objection of the appellant's attorney, also the insurance policy issued by the carrier. Upon this evidence, the attorney-referee denied the claim for compensation. On petition for review, the commission reversed the finding of the attorney-referee and awarded compensation and upon appeal to the circuit court, its finding was affirmed. From this judgment, the National Surety Corporation, the insurance carrier, appeals.

The appellant first argues that the injuries of the appellee, Victor T. Kemp, did not arise out of and in the course of his employment with the Skene Gin Company. His contention being that at the time the appellee received his injuries he was about the personal business of W. E. Kent in furthering his candidacy for Sheriff of Bolivar County, and doing nothing pertaining to the ginning business. The appellant cites a number of authori-

ties of other jurisdictions supporting his contention. We have examined these authorities and others and find that it is an impossible task to reconcile the various holdings. This is due, in a number of instances, to the wording of the various statutes and in the final analysis no general rule is laid down, and each case must be determined by its own facts and circumstances.

Under the workmen's compensation law, Chap. 354, Miss. Laws of 1948, as amended by Chap. 412, Laws of 1950, Sec. 2, par. 2, provides: " 'Injury' means accidental injury or accidental death arising out of and in the course of employment, . . ." In par. 4 of said Sec. 2, " 'employee' means any person, including a minor whether lawfully or unlawfully employed, in the service of an employer under any contract of hire or apprenticeship, written or oral, express or implied." Section 4 provides: "Compensation shall be payable for disability or death of an employee from injury arising out of and in the course of employment, without regard to fault as to the cause of injury."

We have consistently held that ▆▆ █ the workmen's compensation law should be given a broad and liberal construction and that doubtful cases should be resolved in favor of compensation. Deemer Lumber Co. v. Hamilton, 211 Miss. 673, 52 So. 2d 634; Lucedale Veneer Company v. Rogers, 48 So. 2d 148; Mutual Implement and Hardware Company, et al. v. Pittman, 214 Miss. 823, 59 So. 2d 547; Myles and Sons, et al. v. Myatt, 11 Adv. S. 12, 61 So. 2d 390.

Horovitz, on "Current Trends in Workmen's Compensation," pp. 663-65, says: "The trend is to get away from earlier narrow or strict cases and to follow the more recent liberal views. The overwhelming weight of authority gives the benefit of the doubt to claimants on law questions, as distinguished from fact questions. And the weight of authority urges the trial court or commissioners to construe evidence liberally in favor of claimants

in compensation cases; and on appeal there is a growing modern tendency to uphold findings for claimant even though the facts on which they are based are doubtful, slender or weak, and to reverse findings of fact which disregard favorable, uncontradicted evidence, or which reach unfavorable general conclusions, hiding the law or the specific facts, or which construe evidence narrowly against claimants. The rule of liberal and broad construction is especially justified, as the acts usually severely cut down the amounts individuals can recover, with the intent that the recoveries be spread over a large number of cases and thus benefit larger groups of workers, and to effectuate the humane purposes for which the acts were enacted. Hence board or commission awards based on a liberal construction of the words 'out of' are upheld whenever 'rationally possible.' Any reasonable doubt as to whether the act or injury of the employee arose out of the employment should be resolved in favor of the employee or dependent, in view of. the policy of broad and liberal construction of the workmen's compensation law.''

In Schneider's Workmen's Compensation Text, Vol. 7, Sec. 1660(a), it is stated: ''An employee who, as a voluntary accommodation to his employer or to another, performs services outside the scope of his employment, is not within the act while performing such services. . . . But an employer may enlarge or extend the scope of the employment and an employee who, at the direction of his employer or of his superior to whose orders he is subject, performs services outside the duties of his usual employment, and performs them in consequence of the existence of the relation of employer and employee, and as incidental to the employment, is within the protection of the act while performing such services. . . . Where an employee performs services for a third party by direction of his employer, if the relation of employer and employee continues to exist between them during the

period of such services, the employer is liable under the compensation act for injuries sustained by the employee while performing the task so assigned to him although he may be under the control of the third party as to the details of the work.''

To the same effect is Larson's Workmen's Compensation, and in Vol. 1, Sec. 27.40, p. 421, we find the following: ''When any person in authority directs an employee to run some private errand or do some work outside his normal duties for the private benefit of the employer or superior, an injury in the course of that work is compensable. . . . The technical reason for these holdings is simply that, whatever the normal course of employment may be, the employer or his supervisory staff have it within their power to enlarge that course by assigning tasks outside the usual area. If they do not assign these tasks on the strength of the employer-employee relation on which compensability depends, then what is the source of authority by which the task is assigned? The practical reason for the rule is that any other view places the employee in an intolerable dilemma: if he complies with the order, he forfeits compensation protection; if he does not comply, he gets fired. Tested by these simple arguments, the cases denying compensation seem wrong.''

In 58 Am. Jur., Workmen's Compensation, Sec. 231, p. 738, it is stated: ''. . . According to many authorities, however, the employee is entitled to compensation as for an injury arising out of and in the course of his employment when such injury was received in the performance of work for his employer outside the scope of his usual duty, but which the employee had been expressly ordered to do by someone authorized to direct him as to his work; . . .''

The following authorities hold that such acts are compensable:

In Moody v. Baxley, et al., 28 So. 2d 325, the Supreme Court of Florida, in affirming an award of compensation to an injured employee, said:

"This is a suit under the Workmen's Compensation Act. The employer owned and operated a restaurant which was operated under the name of Humpty Dumpty. L. M. Moody, a brother of the employer, was employed as manager of the Humpty Dumpty Restaurant. Baxley, the employee, and claimant, was employed by the employer as a cook at the restaurant, but, in addition to his work as cook, helped do the buying of the supplies for the restaurant and was a general helper. . . .

"The employer owned a farm which was located in Nassau County. At the time of the accident nothing was being produced at the farm to be used in the restaurant. On the particular day preceding the night on which the accident occurred the employer had instructed his brother, the manager, and Baxley, the employee, to go that night to the farm and install a lock on a door which had been broken into. On this trip the accident occurred and Baxley was seriously injured.

"Baxley's regular time to get off from his work on that day was 4:00 P.M. but he continued working at the restaurant and helping at odd jobs and purchasing supplies for the restaurant until he left with the manager, at the direction of the employer, to go on the trip on which he was injured. . . .

"The appellant contends that the employee did not sustain injury by accident arising out of and in the course of his employment. . . .

". . . By reason of his employment, Baxley and his employer assumed that the employer had the right to direct that Baxley perform this errand as a thing incidental to his employment by Moody, although it was not connected with the operation of the restaurant, which was the business enterprise in which Moody was engaged."

The court in support of its decision cited the case of Metzger v. Koefler, et al., 235 N. W. 802, where it was held that the employee was acting within the course of his employment although he was doing work entirely foreign to his regular duties, and we quote:

"The award for compensation to be paid by plaintiffs, and which they seek to have vacated, was made to the widow of George Koefler, who was fatally injured on June 1, 1929. On that day, and for about a year prior thereto, Koefler was in the employment of the plaintiff Metzger, who was engaged in business as a painting contractor, and in that business employed from three to fourteen men. Koefler's employment was to do painting and work incidental thereto in the usual course of Metzger's painting business. On June 1, 1929, Metzger directed his foreman, with the assistance of another of his employees, to haul some furniture, after the usual daily working hours, on Metzger's truck from his city residence to a distant summer cottage, which he and his wife owned and desired to furnish and rent. Neither was engaged in the business of furnishing or renting such cottages. The foreman selected Koefler to assist him, and for that service Koefler was given credit as his usual rate of compensation on the regular pay roll of Metzger's painting business. While returning on Metzger's truck from the cottage to his city garage, the accident occurred which caused Koefler's death. . . .

". . . The mere fact that the particular act, which Metzger, during the course of and incidentally to Koefler's employment, requested him to perform, was unusual, or not customarily required of employees in the painting business, did not result in terminating or suspending temporarily, the existing status of Koefler as an employee of Metzger in the usual course of his painting business. In other words, on the point under consideration, the statutory definition only excludes those as to whom there does not exist, at the time of the injury, employment in the usual course of business of the al-

leged employer. On the other hand, when such employment does exist, that statutory definition does not exclude an employee because the service, which he is temporarily performing for his employer, is not usually requested of employees in such employment. When such employment exists, it is sufficient that the service, which such an employee is performing when injured, grows out of and is incidental to his employment.''

We next quote from the case of Nugent Sand Co. v. Hargesheimer, 254 Ky. 358, 71 S. W. 2d 647:

''The appellee, Lafe Hargesheimer, was employed as a mechanic by the appellant, Nugent Sand Company. The president of the corporation resided with his mother, and occasionally its employees were sent to his home there to do odd jobs and make minor repairs on the property. This was always done on the company's time. On a Saturday morning in September, 1930, the president directed one of his foremen to take a couple of men out to the house and have them tear down part of the furnace and obtain information sufficient to order some new parts. After the noon hour, which was the usual time of quitting work on Saturday, the foreman took the appellee and another man there. While in the yard of the residence, a dog bit Hargesheimer on the ankle. When the task was finished, the parties returned to the company's place of business and first aid was administered for the apparently slight wound. The time in which Hargesheimer was engaged on this work was added to his weekly pay roll as overtime, and he was paid by the company for it. Within a few days he became ill and before long his arm had become totally paralyzed and his legs partially so. There is no dispute on the appeal that he became permanently and totally disabled. . . .

''The statute (section 4880) defines the accidents under which injuries to an employee are made compensable as those 'arising out of and in the course of his employment.' The act does not say 'when doing the work he was

employed to perform.' The language and the intent are of wider scope. Regardless of judicial inclination, the courts are admonished by the statute itself to construe it liberally in favor of the injured employee. Section 4987, Kentucky Statutes. In Schneider's Workmen's Compensation Law, Sec. 292, and the annotations in 33 A. L. R. 1335, and 82 A. L. R. 1251, are compiled numerous cases in which employees had gone beyond the scope of the particular duties they were employed to perform, both under orders and voluntarily, when injured, and it was held that as they were serving their masters their injuries arose out of their employment and in the course thereof. See Warfield Natural Gas Co. v. Muncy, 244 Ky. 213, 50 S. W. (2d) 543. The conclusions come from a logical interpretation of the law. It is clear that in the instant case, where the employee was directed by the chief officer of the employer, through his foreman, to go and do a certain task and he did so with the company's tools and was paid by the company specially for that work, he was within the orbit of his employment and right to compensation for injuries sustained by reason of his obedience.

"But the appellant predicates its claim for relief from the judgment principally upon the ground of its own departure. In its statement filed with the board (section 4956, Statutes), accepting the provisions of the Workmen's Compensation Act, it declared that it was engaged in the business of 'dredging, barges, tug boats, sand and gravel dealers and stevedoring,' and maintains that its liability was confined to the designated operations; hence when it had its employees working on a furnace in a private residence it was not engaged in the business covered by its acceptance. And though Hargesheimer had signed the agreement presented to him by appellant that their relation was covered by the terms of the act, nevertheless he was not under its protection when injured. . . .

"To hold in this case that the employer could escape liability on the grounds claimed would be dropping the

substance to reach for the shadow, as in the fable of the dog and the bone."

In Nygaard v. Throndson Bros. et al., 173 Minn. 441, 217 N. W. 370, an employee who was rendering personal service to one of the brothers continued in service of Throndson Brothers. We quote the opinion in full.

"Certiorari, at the instance of the insurer, to review an award of compensation by the Industrial Commission.

"During the late summer and early autumn of 1925 Nygaard was employed by Hans and Tom Throndson, who, under the firm name of Throndson Bros., were operating a threshing outfit in Ottertail County. Nygaard, according to his own testimony, was employed by them 'to take care of the bagger and do whatever he was called upon, help around the machine, anything, whatever they see fit to put me.' During a rainy week when the machine was laid up, Tom Throndson went to Ashby in Grant County to inspect another threshing rig which was understood to be for sale. Throndson Bros. had an automobile of their own, but it was temporarily out of commission, so Nygaard offered the use of his own Ford for the trip and went along as driver. He was paid for his time as usual, his employment continuing during the journey to Ashby the same as though threshing had continued. While cranking his car at Ashby, Nygaard was severely injured by a 'backfire.'

"The one question is whether the injury arose out of and in the course of the employment, and we are clear that it was correctly answered in the affirmative by the Industrial Commission. Section 4268, G.S. 1923, does exclude from the operation of the Workmen's Compensation Law 'persons whose employment at the time of the injury is casual, and not in the usual course of the . . . occupation' of the employer. But, in order to make operative the exclusionary effect of that section, the employment must be both casual and not in the usual course of the business of the employer. O'Rourke v. Percy Vittum Co., 166 Minn. 251, 207 N. W. 636, and cases cited. In

that case it was said also that an employer may enlarge or extend the scope of the employment; and that an employee who, at the direction of his employer, performs services beyond the scope of his usual employment but in consequence of the relation of employer and employee and as incidental to the employment, is within the protection of the act while performing such services. That is this case precisely. It may well be that Nygaard volunteered the use of his machine for the journey to Ashby. But the fact remains, and is decisive, that during the entire journey Nygaard remained the employee of Throndson Bros., was under their control, and was paid accordingly. The personal service rendered on that journey was referable solely to the pre-existing and continuing relation of master and servant. So we need not consider whether the trip was undertaken in the usual course of the employer's occupation. Its purpose was to inspect a threshing outfit offered for sale. It is not clear whether the purchase in contemplation was to be made by both the Throndson brothers or by Tom alone. But that doubt is not important, for it remains that Nygaard, as chauffeur for Tom Throndson on the journey to Ashby, continued in the service of Throndson Bros.''

The case of McDonald v. Grand Battery & Ignition Service, 254 N. Y. 605, 173 N. E. 886, was an ''appeal from an order of the Appellate Division of the Supreme Court in the third judicial department, entered May 23, 1930, affirming an award of the State Industrial Board made under the Workmen's Compensation Law. Claimant was employed as an electrician by the defendant, Grand Battery and Ignition Service, the sole proprietor of which was a man named Muller. By his direction claimant had been doing some work at Muller's home and went out on Sunday to see him and obtain his direction as to the completion of the job. While there, by direction of Muller, claimant attempted to crank an automobile, which kicked back, fracturing his wrist. The insurance carrier contended that the accident did not arise out of and in the

course of the employment. Order affirmed, with costs; no opinion.''

In the case of Utica Mutual Insurance Co. v. Winters, et al., 48 S. E. 2d 918, one E. B. Folds was doing business as the Folds Motor Company, which was covered by workmen's compensation insurance. He directed one John B. Winters, an employee of the motor company, to go to his farm and clean out a well. While so doing, he was killed. The Georgia Supreme Court held that his dependents were entitled to compensation, and in upholding the award, said:

''The employer, E. V. Folds, as the sole owner thereof, was engaged in the 'automobile business, gasoline business and farming.' The automobile business and gasoline business, as we interpret the record, was owned and operated as the Folds Motor Company. The Workmen's Compensation Act does not apply to farm laborers; however, it did apply to the Folds Motor Company, since it employed more than ten employees and was not one of the specifically exempted businesses, and the motor company elected to accept the provisions of the Act and took out a compensation insurance policy covering its business. . . .

''The Director and, on review, the full Board were therefore authorized to find that the motor company was operating under the Workmen's Compensation Act; that the decedent of the claimant had a contract of employment with the motor company; and that, as an employee of the motor company, he was sent by it to clean a well on the motor company's time, for which service he was to receive additional pay. This did not create a new, or another, employment, casual or otherwise. There was only one contract of employment, which contract was with the motor company, and such a change of work done or compensation paid would not change the relationship existing between the employer and the employee. The cleaning of the well under such circumstances with extra compensation was not a new contract or a different contract, but was merely an extension or enlargement of the

contract and of the employment already existing; and such extension or enlargement of the existing contract kept or retained the act of cleaning the well by the decedent of the claimant under the direct order of such employer within the sphere or limits of his one and only contract of employment with the motor company. In other words, the doing of such additional work with extra pay was an incident of the contract of employment with the motor company; for to hold otherwise might in some cases—where the work was distributed among several lines of work—create as many different contracts of employment as there were different lines of work, and, with every new piece of work outside the particular work for which the employee was employed, a new contract would be formed. We think the Director was authorized to find that neither the employer nor employee intended the formation of a new contract with each such change—as was revealed in the instant case—in the character of the work directed by the employer to be performed; and where such employee under the circumstances here was killed while acting under the orders of the motor company, his dependents are entitled to compensation.''

For a general discussion, see Anno., 172 A. L. R. 378.

Under the above authorities, we are of the opinion that under the undisputed facts in this case that Kemp, at the time he received his injuries, was fulfilling his contract of hire with the Skene Gin Company. Admittedly Kent was a candidate for political office and this was a personal matter as far as he was concerned, but as for Kemp, he was doing what he was ordered to do by the general manager of the Skene Gin Company, his employer, and he was paid his regular salary for so doing. Under these circumstances, we hold that his injuries arose out of and in the course of his employment within the meaning of the compensation law and were compensable.

It is next argued that the appellee Kemp was not covered under the insurance policy, that coverage was limited by the policy to ginning operations. Appellant

contends that the policy, in declaration 3, shows that it covered ginning operations in ''Skene, Mississippi, and elsewhere in the State of Mississippi;'' that the operations insured were classified as: ''cotton gin operations —during both the ginning and dormant seasons,'' etc.

The record shows that the policy was issued on April 7, 1951; that the premium paid was $264.00, which was based on the total annual payroll of the Skene Gin Company, and included the annual salary of the appellee. The question raised by the appellant calls for a construction of the provisions of the workmen's compensation law with reference to liability of insurance carriers. Secs. 32 and 33 are as follows:

''Sec. 32. Security for payment of compensation. (a) Insurance of liability: An employer liable under this act to pay compensation shall insure payment of such compensation by a carrier authorized to insure such liability in this state unless such employer shall be exempted from doing so by the commission.''

''Sec. 33. (a) Insurance Policy Regulations. Every contract for the insurance of the compensation herein provided for, or against liability, therefore, shall be deemed to be made subject to the provisions of this act, and provisions thereof inconsistent with act shall be void. Such contract shall be construed to grant full coverage of all liability of the assured under and according to the provisions of the act, notwithstanding any agreement of the parties to the contrary unless the Insurance Department has theretofore by written order specifically consented to the issuance of a policy on a part of such liability. . . .

''(b) Substitution of carrier for employer: In any case where the employer is not a self-insurer, in order that the liability for compensation imposed by this act may be most effectively discharged by the employer, and in order that the administration of this act in respect of such liability may be facilitated, the commission shall by regulation provide for the discharge, by the carrier for

such employer, of such obligations and duties of the employer in respect of such liability, imposed by this act upon the employer, as it considers proper in order to effectuate the provisions of this act. For such purposes (1) notice to or knowledge of an employer of the occurrence of the injury shall be notice to or knowledge of the carrier, (2) jurisdiction of the employer by the commission or any court under this act shall be jurisdiction of the carrier, and (3) any requirement by the commission or any court under any compensation order, finding, or decision shall be binding upon the carrier in the same manner and to the same extent as upon the employer.''

In addition to these quoted sections, the purpose and policy of the legislature in enacting the workmen's compensation law with reference to compensation is stated in the title—''to provide methods of insuring and securing the payment of such compensation . . .''

The language of the quoted sections are plain and unambiguous and need no construction. Wilson v. Y. & M. V. R. Co., 192 Miss. 424, 6 So. 2d 313. Sec. 32 requires the employer to ''insure payment of such compensation by a carrier.'' Sec. 33 provides that insurance policy ''shall be construed to grant full coverage of all liability of the assured under and according to the provisions of the act . . . unless the Insurance Department has theretofore by written order specifically consented to the issuance of a policy on a part of such liability.'' It is conceded that the Insurance Department did not consent to the issuance of a policy on a part of the liability, therefore, the coverage was not limited.

Under the above sections, the employer's liability to pay compensation to the employee became the obligation of the insurance carrier, the liability of the carrier being co-extensive with that of the employer. In the case of Maryland Casualty Co. v. Industrial Commission of Wisconsin, on rehearing, 198 Wis. 208, 223 N. W. 444 (1929), the Court had before it the construction of a similar statute (Sec. 102.31, p. 206), which appears to be identi-

cal in its effect to Sec. 33 of our law. There the Court said:

"A study of the workmen's compensation act (Chap. 102 Stat.) convinces us that with respect to insurance the statutory scheme was intended to do more than merely protect the employer against liability on account of injuries sustained by his employees. The quite evident purpose of the whole scheme is to guarantee payment of compensation in accordance with the terms of the act to the injured employee . . . That the act requires, in the absence of special permission by the Industrial Commission, that every policy insuring against liability for workmen's compensation shall in its coverage be co-extensive with the provisions of the statutes." Also see Werner v. Industrial Commission, 212 Wis. 76, 248 N. W. 793 (1933).

In Moody v. Baxley, supra, the Court said: "We may say here that if the injury was compensable by the employer, the liability attaches to the carrier. Section 440.38, Fla. Statutes 1941 (same F. S. A.), inter alia, provides: '440.38. Security for Compensation. (1) Every employer shall secure the payment of compensation under this chapter—(a) by insuring and keeping insured the payment of such compensation with any stock company or mutual company or association or exchange, authorized to do business in the state, or . . . So, when a carrier assumes to insure the payment of compensation by the employer, it is bound to pay whatever may be lawfully adjudged against the employer." See also Utica Mutual Ins. Co. v. Winters, et al., supra; Bates v. Nelson, 240 Iowa 926, 38 N. W. 2d 631.

In Skuey v. Bjerkan, 173 Minn. 354, 217 N. W. 358, (1928), in Syllabus 2, it is stated: "Under the statute there is but one risk for the purpose of compensation insurance; and the parties thereto cannot, without the approval of the industrial commission, limit the coverage in the policy to certain occupations therein specified."

The appellant contends that the liability of the carrier is limited by the terms of the policy, and that the provisions of the policy control. To this we do not agree, as the applicable provisions of the workmen's compensation law are automatically written into the policy by operation of law. Ins. Co. v. Cowan, 111 Miss. 453, 71 So. 746; Bacot v. Phoenix Ins. Co., 96 Miss. 223, 50 So. 729; Commercial Casualty Ins. Co. v. Skinner, 190 Miss. 533, 1 So. 2d 225.

The appellant, in its brief, says: "Under the holding of the Court below and the award made by the Commission, an insurer is not entitled to know the business in which the assured is engaged, but is liable, having once written a policy, regardless of the business or activity in which the employee is engaged at the time of his injury." In answer to this statement, the record shows that the appellant voluntarily accepted the premium and issued its policy on April 7, 1951, and that the appellee's injuries occurred on July 10, more than three months later. The appellant was evidently satisfied with the risk, as it made no effort to cancel the policy, as provided in Sec. 33(a) of the act.

The last assignment argued is that the attorney-referee erred in admitting in evidence the statement and supplementary statement of W. E. Kent. The record shows that these statements were prepared by one of the attorneys for the appellant, and this was not contradicted. The record also shows that W. E. Kent was present at the hearing and was cross-examined at length by counsel for the appellant. Sec. 22 of the act provides:

"Procedure before the Commission. (a) In making an investigation or inquiry or conducting a hearing, the commission shall not be bound by common law or statutory rules of evidence, or by technical or formal rules or procedure, except as provided by this act, but may make such investigation or inquiry or conduct such hearing in such manner as best to ascertain the rights of the parties . . ."

There is no merit in this assignment, and the judgment of the court below is therefore affirmed.

Affirmed.

*Roberds, J.,* dissenting; all other justices concur.

ROBERDS, J., dissenting.

The insurance policy described the business or activity of the partnership employees covered by the insurance as that of "Cotton Gin operation—," at Skene, Mississippi, and then particularized the work involved in that operation.

Claimant was injured by coming into contact with a live electric wire while upon an electric pole endeavoring to attach thereto a political banner so as to stretch such banner several feet high across a street in Pace, Mississippi.

Under Chapter 354, Section 2 (2), injury to be compensable under the Act, means injury "arising out of and in the course of employment" covered by the insurance.

It is a far cry from working at a gin in Skene and climbing an electric pole in Pace. Indeed, by logic and reasons, there is not the slightest connection between the two activities. The majority opinion recognizes that and places liability of the carrier solely on the ground that the claimant, for what he deems sufficient reason, was willing to go outside his employment and do this political work for Mr. Kent. Such a test of liability is not only vague, indefinite and uncertain but is practically without limit. How is an insurer to know what rate to charge or the limit of liability? By that test there is liability regardless of the hazard resulting from the activity from which the injury results. Suppose Mr. Kent desired to go fishing upon dangerous waters and claimant was willing to row the boat and had drowned? By the adopted test the insurance carrier would have been

liable. Many situations can be conceived just as unfair and unreasonable, and even more so, than that. Indeed, the facts of this case support the assertion. The policy, in detailing the ginning operations, mentions yardmen and seed haulers, and some other duties, involving no unusual hazards. In the case at bar we have a pole carrying high voltage electric wires, claimant goes up this pole and comes in contact with what is termed in the record a "hot wire." How can it be perceived that this insurance carrier could ever anticipate the insurance would cover a situation of that kind? Law, unless the result of arbitrary statute, ought not to disregard all reason and common sense.

Even in the extreme cases cited and relied upon as precedent in the majority opinion, some of them do involve some slight causal connection between the activity covered by the insurance and that producing the injury. For instance, in the Nygaard v. Throndson Brothers case, claimant was assisting in threshing grain; wet weather had stopped activity and he went with his employer to inspect a threshing machine with the view to purchase thereof by the employer. There is, of course, a slight connection between the two activities. However, it will be noted that in all of the cited cases the injury resulted from one outside activity—simply a going aside to perform some single or temporary outside task. Here claimant started this political activity for Mr. Kent on July 8. The first primary was August 7. Claimant, then, was to continue his political assistance at least thirty days, and, no doubt, Mr. Kent expected to survive the first primary and be nominated in the second primary some three weeks later. As a matter of fact it appears he was elected sheriff at the general election in November. So that his engagement of the services of claimant to assist him in his political campaign was not to consist of one or two acts but was for a considerable period of time, which itself, even if we accept as authority the extreme, or so-called, liberal cases

cited in the majority opinion, distinguishes this case from them.

There are scores of cases holding contrary to the conclusion reached in the able majority opinion. Some of them are: Paradis' Case (Me.), 142 A. 863; Phillips v. Industrial Com. (Ill.), 61 N. E. 681; Burnett v. Palmer-Lipe Paint Co. (N. C.), 204 S. E. (2d) 507; Kramer v. Industrial Accident Com. (Cal.), 161 P. 278; Elliott v. Elliott Bros. (Tenn.), 52 S. W. (2d) 144; Olson's Case (Mass.), 147 N. E. 350; Tunnicliff v. Pettendorff (Ia.), 214 N. W. 516; Pacific Employer's Ins. Co. v. Department of Industrial Relations (Cal.), 267 P. 880; Martensen v. Schutte Lmbr. Co. (Mo.), 162 S. W. (2d) 312; American Mutual Liability Ins. Co. v. Lenning (Ga.), 200 S. E. 141. Many others are collected under the annotation in 172 A. L. R., beginning at page 378. But the question for us is simple. Our statutes as to the insurer require the activity causing the injury to arise out of and in the course of the employment covered by the insurance. By no process of reason, in my opinion, can that be said to be true in this case.

Mr. Kent may be liable. That is not the question. Is the insurer liable? That is the question. They are very different questions.

---

ON SUGGESTION OF ERROR

July 3, 1953 35 Adv. S. 6 65 So. 2d 840

ETHRIDGE, J.

Appellant, National Surety Corporation, argues that Kemp's injury resulted solely from personal work done for an individual, Kent, and not for the partnership, Skene Gin Company, which it is said is an employing entity under the workmen's compensation act. But that position disregards the undisputed facts as to the peculiar nature of the contract between Kemp and Skene Gin Company. The gin could provide only six or seven

months' work exclusively at the gin, so, in order to obtain a competent gin operator, the company had to employ Kemp on a year-round basis at a salary of $250.00 per month. The contract of employment provided that in addition to operating and repairing the gin, Kemp would perform any duties which might be assigned to him by either of the partners of the gin company. In other words, the scope of his employment was two-fold: to operate the gin, and to do any tasks which he was directed to perform by either of the partners. His salary was paid for the entire year by the partnership. Hence the injury suffered by claimant was incurred by him under the contract of employment itself, and under the direction of his employer. As a matter of fact, the performance of duties assigned to claimant by the partnership, through one of the partners, was of benefit to the gin company's operations in the practical sense that the performance of such tasks made available to the company the services of claimant for the actual operation of the gin. The peculiar nature of this contract resulted in Kemp's injury arising out of and in the course of his contracted employment.

And to the extent that the particular work he was doing when he was injured was not specified in the contract, the injury also clearly comes within the numerous cases discussed in the original majority opinion which recognizes the right of the employer to enlarge the course of employment by assigning tasks outside the usual area. The employer-employee relation was the source of the authority for the assignment of the task which claimant was doing when he was injured. The dual employment cases are not relevant, because Kemp was not employed by two employers, but by only one, the partnership.

· Suggestion of error overruled.

*Hall, Lee, Kyle, Holmes,* and *Arrington, JJ.,* concur.

LOTTERHOS, J., dissenting:

In the original consideration of this case, I concurred with the majority opinion in affirming the judgment of the court below, granting compensation to appellee for his injuries. My conclusion at that time was based very largely on the peculiar contract of employment disclosed by this record. It appears that, although appellee, Kemp, was employed on an annual basis at a monthly salary by the partnership, which operated a cotton gin, yet his contract provided for the performance of duties disconnected from the gin in the off-season, when the gin was not in use. It, therefore, seemed to me that he was employed by the partnership for whatever duties might be assigned to him away from the gin, as fully and completely as he was for those activities connected with the gin. It was reasoned that, since the partnership was covered by the compensation act, though nominally as a cotton gin company and so designated in the insurance policy, Kemp, being an employee of the partnership and being obliged under his contract to do whatever work the individual partners directed during the off-season, was acting in the course of his employment during all working time, regardless of the nature of the work done. In other words, the covered partnership was not a gin company only, but a company for operating a cotton gin and for furnishing general services to the members of the firm.

Having concluded that the partnership was liable to appellee under the act, in this particular situation, because of the special contract of employment, I next considered the position of appellant, National Surety Corporation, which insured the partnership under a policy expressly limited to ginning operations. If we look to the policy alone, of course, the insurance company cannot be liable for an injury incurred in the process of putting up political signs for an individual partner and entirely disconnected from operation of the gin. But the compen-

sation act provides (Sec. 33(a), Chap. 354, Laws of 1948; Sec. 6998-39, Code of 1942) that insurance contracts thereunder "shall be deemed to be made subject to the provisions of this act, and provisions thereof inconsistent with the act shall be void"; and that such contracts "shall be construed to grant full coverage of all liability of the assured under and according to the provisions of the act, notwithstanding any agreement of the parties to the contrary unless . . ." If the assured, the partnership, is liable to appellee, then it seems to follow that appellant is deemed to have granted full coverage of that liability.

It follows, in my view, that, regardless of what rights, if any, appellant might have, as against the insured partnership, to recoup its loss, by virtue of the contract between it and the partnership expressly covering gin operations only, the claimant, by the statutory provision, is empowered to collect from the insurance company whatever compensation he may be entitled to receive from his employer, the partnership.

My conclusion on the original consideration being the result of the reasoning outlined above, I did not give particular weight in this connection to the line of cases cited in the opinion. I felt that appellee had not been directed to turn aside from the scope of his usual duty to perform an incidental, private service for his employer, as in those cases, but that he was injured while performing his usual off-season duties, they being whatever work the individual partners desired.

It now appears to me, in the light of appellant's suggestion of error, that, even on the basis which has been discussed herein, there is no liability of the partnership to appellee for his injury. It is true that he was employed to work at the gin in the ginning season, and to work at whatever tasks the individual partners assigned him in the off-season, and that his entire compensation was paid by the partnership. However, it now seems

clear to me, on this record, that the partnership, which was covered by and subject to the compensation act, was actually engaged in the gin business only. It employed appellee in that business; but, as it was necessary to employ appellee on an annual basis and as there was no work for him to do at the gin in the off-season, the partnership arranged for the partners to use him during that time.

While Kemp, the appellee, was working at the gin or doing any work whatever that had some connection with the partnership business, he was, of course, covered. But, when the end of the season came, and there was nothing further for him to do in furtherance of the firm business, then he left that employment for a time, and entered into the performance of designated services for the persons who were members of the partnership. It cannot be, to my mind, that, when Kemp, the appellee, set forth on the project of hanging the large political banners or signs over the streets of various towns for Kent, an individual, who was a partner in the gin firm and who was at the time a candidate for sheriff, he, Kemp, was in the course of employment with the partnership. He was being paid by the firm, it is true, but he was working for, and was in the employment of, Kent, the candidate for sheriff. He had been loaned to Kent by the partnership, which had paid for appellee's services, but did not need them at that period of the year. It was Kent who received the benefit of appellee's services; who instructed him what to do, and where and when; and who had supervision and control over Kemp in the performance of his duties, while he was engaged in aiding the political campaign. During that time Kemp was completely severed and separated from the course and scope of his work with the partnership.

In summary of the line of cases cited in our original opinion, we quoted from Larson's Workmen's Compensation Law and from American Jurisprudence on the

same subject. We quoted from the former text (Sec. 27.40) as follows: ''When any person in authority directs an employee to run some private errand or do some work outside his normal duties for the private benefit of the employer or superior, an injury in the course of that work is compensable.'' But, note the paragraph of the text immediately following that language:

''Two questions closely related to this one must be distinguished, since they turn upon principles basically different. The first is the question of dual employment. An employee may, as a regular thing, work alternately as a janitor in a printing shop and as a yardman at the employer's residence. The question here is one of dual status, with the possibility of separating the two jobs and holding that one of them is not under compensation coverage. This problem differs from the present problem, in that here the employee is regularly employed at only one job, and the private task is an unusual incident.''

Now let us see what Larson has to say about dual employment. His comment on this subject (Sec. 48.50) is as follows:

''When there is a true dual employment, and the particular industry in which the injury occurs can be clearly identified, it is only logical, under compensation theory, that that industry should bear the compensation cost. So, when a watchman was hired by two companies (although in form the contract was made only by one), the company in whose service he was acting at the time of the injury was held liable exclusively for the cost of that injury. But if he had been on his way between buildings, the impossibility of identifying a single employer as the one being served would necessitate a finding of joint liability. Similarly, a deliveryman engaged to deliver packages for two employers was held to be in the exclusive service of one, when, having completed deliveries for the other, he was devoting himself entirely to the interests of the first employer by delivering his packages. But,

obviously, a deliveryman going along the street with the packages of both employers would have to be held a joint employee. The dual-employment role should be resorted to only when the complete identification of the employee's activities at the time of injury with a single employer is beyond dispute. There should be no weighing of relative value of particular services to different employers, or quibbling about borderline activities, since, if there is any evidence of joint service, added to the conceded fact of employment of both employers, there can be no great unfairness in imposing shared liability on the employers.''

It is my view of this case and its facts that there is a complete identification of Kemp's activities at the time of the injury with Kent's political campaign, and not with the business of the partnership, Skene Gin Company. This is no ''quibbling about borderline activities,'' such as Larson excludes.

Our original opinion also quoted language from American Jurisprudence (58 Am. Jur., Workmen's Compensation, Sec. 231, p. 738). Note the last paragraph of that section:

''In the case of injury to an employee of a business or industrial enterprise while performing, by direction of his employer or superior, some service primarily for the private or individual benefit of such employer or superior, or of some other person, rather than for the benefit of such enterprise, some authorities take the view that such an injury may, under some circumstances, be compensable as arising out of and in the course of the employment, while others hold to the contrary, and the right to compensation has usually been denied where the particular services are entirely unrelated to the business enterprise.''

It seems to me that Kemp's services being rendered at the time of his injury were ''entirely unrelated to the business enterprise'' of the insured partnership.

The act requires that an injury, in order to be compensable, must be one "arising out of and in the course of employment." Obviously, the provision means that it must arise out of and be in the course of the employment by the person to be charged with payment of the compensation. In this case, appellee was injured while he was in the course of employment by Kent, and not while he was in the course of employment by Skene Gin Company. He was hanging political banners for Kent; he was not performing any service for the gin company. I do not think that the legislature ever intended the result reached in our original opinion.

Therefore, it is my judgment that the suggestion of error should be sustained, and, accordingly, I respectfully dissent from the majority decision.

Roberds, J., dissenting:

For the reasons stated in my original dissenting opinion and the additional reasons set forth in the foregoing dissent by Judge Lotterhos, I respectfully dissent from the majority holding in this case. *Judge McGehee, Chief Justice,* joins herein.