## WILKINS, et al. *v.* WOOD

No. 40322 December 17, 1956 91 So. 2d 560

*Hardy Lott,* Greenwood, for appellants.

*Morgan & Morgan,* Kosciusko, for appellee.

McGehee, C. J.

This is a claim for compensation (death benefits) under the provisions of the Mississippi Workmen's Compensation Act, as amended. The claim is made by the appellee, Mrs. Catholeen Wood as the widow and dependent of Robert Wood, deceased, against J. D. Wilkins, d. b. a. as J. D. Wilkins Gin, as employer, and United States Fidelity & Guaranty Company, insurance carrier, because of the death of Robert Wood on September 29, 1953, which occurred when he was hauling three bales of seed cotton with a tractor and trailer to the gin of J. D. Wilkins, but which cotton had been grown and was being harvested by Wood as a share cropper on a 765-acre farm of the said J. D. Wilkins.

The appellant J. D. Wilkins owned and operated several businesses. He is a banker and also the owned of the J. D. Wilkins Gin at Duck Hill, Mississippi, and the 765-acre farm near there. He applied for, and secured from the appellant U. S. F. & G. Company, a workmen's compensation insurance policy covering the operations of the J. D. Wilkins Gin, on the payroll of which Robert Wood was never listed as an employee. No wages were paid Wood for work at the gin, and no part of the premium for the insurance policy was based on any wages for work that Robert Wood was doing during the year 1953. Nevertheless J. D. Wilkins did all that he honestly could to assist the widow of the deceased workman to make out a case of liability against his codefendant, the insurance carrier.

During the ginning season of 1953 Robert Wood was paid by the J. D. Wilkins Gin the price of $1 per bale for

baled cotton hauled by him on his own truck and at his own expense from the gin at Duck Hill to the compress at Greenwood. Robert Wood then was paid by the Buckeye Cotton Oil Company for cottonseed hauled by him from the gin to the oil mill. He also hauled seed cotton for various farmers from their farms to the gin at $1 per bale and the compensation for this work was paid to him by the J. D. Wilkins Gin, the same as was being paid by the ginner to the farmers per bale when they hauled their own cotton to the gin. And Wood performed certain work about the gin such as lacing belts, and other odd jobs, for which he was not paid, nor promised pay, by the J. D. Wilkins Gin.

For about ten years prior to March 1953, Robert Wood had owned and operated an automobile filling station at Duck Hill in which Wilkins had no interest, but where he was a customer and purchased gasoline and oil for his personal use and paid Robert Wood for it. After Wood sold his filling station, he entered into a farming arrangement with J. D. Wilkins for the year 1953, whereby he was to cultivate twenty or twenty-five acres in cotton on a part of the land which comprised the 765-acre Wilkins farm, but which farm land was devoted largely to cattle raising and the growing of feed crops. Wilkins permitted Wood to use the former's farm implements in the making of the crop, and Wood was to pay for three-fourths of the fertilizer, etc., and Wilkins was to pay for one-fourth of the fertilizer and to receive as rent one-fourth of the crop. On the day that Wood came to his death, he was using the tractor and trailer of Wilkins, pursuant to their farming arrangement, in hauling the three bales of cotton to the Wilkins Gin. The cotton had been picked and placed in the trailer by cotton pickers employed and paid by Wood. In other words, the cotton belonged to Wood, subject to the landlord's lien thereon in favor of Wilkins for the one-fourth thereof as rent.

While on the way to the gin that evening, the tractor struck a stump and Wood was thrown therefrom and run over, and it was this accident which resulted in his death.

Section 6998-03, Mississippi Code of 1942, in making an exclusion from the coverage of the Workmen's Compensation Law, provides: "Domestic servants, farmers and farm labor are not included under the provisions of this act, but this exemption does not apply to the processing of agricultural products when carried on commercially." However, the laborer was not engaged in processing cotton commercially within the meaning of this statute when the accident occurred. He was merely doing what all other tenants do in getting their cotton ginned.

And the precise question presented for decision in this case is whether the death of Robert Wood arose out of, and in the course of his employment as a share cropper and farm laborer, or arose out of, and in the course of the work in connection with the operation of the gin business where his work in connection therewith consisted primarily in hauling cotton for farmers to the gin at $1 per bale, paid them by the ginner as an inducement to have the J. D. Wilkins Gin do their ginning, and also in hauling bales of cotton on his own truck and at his own expense from the gin to the compress at Greenwood, and then in hauling cottonseed from the gin to the oil mill at $1 per bale, the hauling of the cottonseed being paid for by the Oil Mill Company.

The total amounts paid by J. D. Wilkins to Robert Wood for labor during the fifty-two weeks preceding the death of the latter were shown on the records of J. D. Wilkins, and the items are undisputed. They were $919, not shown for what purpose paid; $1,785 for discing land on the Wilkins farm; $144 hauling cattle and hay; $4 labor on farm; $49.50 hauling 495 bales of hay on the Wilkins farm; $104.40 hauling baled hay; and for the

labor at the cost of $297.40 for the hauling of cotton to the compress; and $241 for hauling cotton to the compress and $22.67 for hauling cotton to compress.

In other words, it appears that for hauling on the farm Robert Wood was paid a total of $2,086.60, and for his hauling for the gin a total of $561.07, unless the $919 item first above-mentioned was paid in connection with the hauling of said cotton to the gin and cotton to the compress, which in such event would have made a total of $1,480.07. That is to say, the larger portion of the compensation received by Robert Wood for the fifty-two weeks preceding his death was for work in connection with the farming operations. And the amount of $2,086.90 does not include the income that Robert Wood may have received prior to his death and the amount that his widow may have received after his death for his three-fourths of the cotton crop made by him during the year 1953. He was not paid, and there was no agreement for him to be paid, the $1 per bale for hauling his own cotton to the gin which was paid per bale for cotton hauled from other farms to the gin.

The opinion of the attorney-referee, in allowing the claim for compensation, recites that "The deceased had instructions to bring such (his own) cotton to the gin each evening. It is reasonable to conclude from the evidence that when employer-defendant instructed the deceased 'not to leave cotton in the field' that he was also instructing deceased to bring his (Wilkins) tractor and trailer to the gin each evening for safekeeping." However, there is no proof in the record that the tractor and trailer were ever carried to the gin in the evening for safekeeping prior to the accident or that it was being carried there for that purpose on the occasion of the accident. The cotton was being carried there to be ginned instead of being left in the field to be exposed to the elements, or being subjected to some other risks of loss or damage. The owner of the farm had such

an interest in the cotton as would naturally have caused him to want the cotton that had been picked each day to be brought to the gin instead of being left exposed in the cotton field. We do not think that any suggestion or direction from Wilkins to Robert Wood in that behalf would be of such significance as to constitute Wood the employee of the gin when hauling his own cotton from the field to the gin.

Moreover, the fact that a tenant farmer, or day laborer working as a wage hand on a farm, may be under the direction and control of his landlord as to all matters in connection with the farming operation and the harvesting and marketing of the crop would not of itself take such tenant farmer or farm laborer out of the exclusion of Section 6998-03, Code of 1942, exempting domestic servants, farmers and farm labor from the provisions of the Workmen's Compensation Act.

A majority of the full Commission affirmed the decision of the attorney-referee in holding that the claim for death benefits was compensable, but stated in their written opinion that they did not agree with the reasoning of the attorney-referee as to the basis for his decision. Nevertheless they thought that the claim was clearly compensable under the authority of the case of National Surety Corporation v. Kemp, 217 Miss. 537, 64 So. 2d. 723, suggestion of error overruled, 65 So. 2d. 840.

On the appeal to the circuit court, where the decision of the attorney-referee and the Commission was affirmed on different grounds than those given by either the attorney-referee or the Commission, the judge disclosed in his written opinion that he understood the facts to be that "he (Wood) was paid to move the cotton he raised from the farm to the gin." With deference, we think that in this conclusion he was in error. He further held that Section 6998-03, Code of 1942, in providing that, " 'but this exemption does not apply to the

processing of agricultural products when carried on commercially', means not only the actual ginning of cotton but also the movement of the cotton to the gin at the instance of the ginner, although the man who was at the time acting for the gin, was one and the same person who grew the cotton as a 'farmer', since he was the commercial hauler for the ginner, and actually got pay for hauling the cotton he originally grew." We do not think that Robert Wood was engaged in the "processing of agricultural products * * * commercially" when merely hauling his cotton to the gin on the occasion in question, within the meaning of Section 6998-03, supra.

It is readily understandable that the circuit court in reading the testimony contained in this record and which disclosed that Robert Wood had been paid for hauling seed cotton from other farms, baled cotton from the Wilkins' Gin to a compress at Greenwood and cottonseed from the gin to a cotton oilmill, would have gotten the erroneous impression that he was also paid for hauling his own cotton to the gin. We say this for the reason that counsel for the appellant concedes in his brief that "Although the testimony is undisputed and not lengthy, it is harder to get the facts out of this record than from any other record that we have handled." He then calls attention to the fact that both the attorney-referee and the circuit judge base their findings on different versions of the facts, and that in some respects neither version is in accord with the true facts as disclosed by the evidence. Moreover, the chairman of the Workmen's Compensation Commission did not concur with the conclusion of the other two members, and thought that the case should be remanded to the attorney-referee for further development of the facts in certain particulars.

We are unable to agree with the Commission that the case of National Surety Company v. Kemp, supra, is controlling in the instant case. The two cases are similar in

that in each the injured employee performed his duties in and about a cotton gin during the ginning season, and was to work elsewhere at other times during the year in performing his duties. In the summer months one of the partners in the ginning operation in the Kemp case was a candidate for sheriff, and, at his direction, the employee attempted to erect a political banner, and while doing so, he came in contact with an electric wire and was seriously injured. He was not engaged in performing work as a farm laborer at the time he was injured. He was not excluded from the coverage of the Workmen's Compensation Law by the provisions of Section 6998-03, supra, which clearly excluded Robert Wood from the coverage of the act if his death arose out of and in the course of his employment in connection with farming activities.

 Section 6998-03, supra, does not exclude from the coverage of the Workmen's Compensation Law all farmers and farm labor "provided that they do not also work for a gin operator for a substantial portion of the year", but, in effect, it excludes from the coverage of the act all farmers or farm laborers whose injury or death may arise out of and in the course of farming operations. We think that when Robert Wood was run over by this farming tractor and trailer while hauling his own cotton from his field to the gin, his death arose out of and in the course of his farming activities as a share cropper, and that therefore he was excluded from the coverage of the act. Cf. Larson Workmen's Compensation Law, Section 53.40, p. 782.

Reversed and judgment here for the appellants.

*Lee, Holmes, Ethridge,* and *Gillespie, JJ.,* concur.